■ VINCENT CASSARA et al., Respondents, v LARCHMONT-MAMARONECK EYE CARE GROUP et al., Appellants. [600 NYS2d 107] —In an action to recover damages for optometrical malpractice, the defendants appeal from an order of the Supreme Court, Westchester County (Coppola, J.), dated June 19, 1992, which denied their motion for partial summary judgment dismissing the complaint insofar as it is based upon alleged acts of malpractice occurring prior to November 1, 1985.

Ordered that the order is reversed, on the law, with costs, the motion for partial summary judgment is granted, and the complaint is dismissed insofar as it alleges acts of malpractice occurring prior to November 1, 1985.

The background facts are essentially not in dispute. On March 1, 1975, the plaintiff Vincent Cassara, who had worn glasses since he was a child, first consulted with the defendant Joseph Roth, an optometrist, for an eye examination and new glasses. "Visual field exams" taken one week later, and then two months thereafter, disclosed that Cassara had high normal pressure. Cassara thereafter had "checkups" with Roth in November 1975 and October 1976. The record does not disclose whether Cassara's intraocular pressure was tested on those dates. In January 1978, after being involved in a head-on automobile collision, Cassara again consulted with Roth and was referred to an ophthalmologist, who found a small hemorrhage and suggested that he come back in a few months.

Cassara's next three visits to Roth appeared to have been routine checkups. In March 1979, Cassara came to Roth complaining of problems with distance vision. The pressure readings remained in the "high normal" range. In 1980, Roth

and the other individual defendants formed the defendant partnership, Larchmont-Mamaroneck Eye Care Group. Later that year, Cassara returned to the group and saw Roth, again complaining of occasional blurring of his long-distance vision and eye fatigue when reading. The pressure readings were similar to his previous readings, and Roth recommended that Cassara return in six months. When Cassara next came back on May 11, 1982, Roth noted that he had "little area of complaint". This was the last examination by Roth, who subsequently severed his partnership relationship with the group.

On October 4, 1984, Cassara returned to the group and was seen by another optometrist, the defendant Stanley Young. Cassara had no complaints other than wanting to see better. During that visit, Young found that Cassara's intraocular pressure was "at the high end of normal". In order to ensure that there was no glaucoma, a "visual field test" was performed on October 9th. The test revealed that the fields were within normal limits and Young told Cassara to have his eyes re-checked in another year. Eighteen months later, in April 1986, Cassara returned and was seen by Young, who found that the intraocular pressure again was high normal. Thus, another visual field test was done on April 24th. Noticing a change in the results, Young referred Cassara to an ophthalmologist associated with the group. After consulting with the ophthalmologist, Cassara learned that he had glaucoma.

On or about November 1, 1988, Cassara and his wife commenced the instant action against the defendant optometrists, asserting that they negligently "failed to properly examine and diagnose" his glaucoma and "failed to properly refer him to [an ophthalmologist] for necessary treatment". The defendants moved for partial summary judgment, arguing that the three year Statute of Limitations governing optometrical malpractice *(see,* CPLR 214 [6]) barred any cause of action based on any acts or omissions on their part prior to November 1985. The court denied the motion. We reverse.

The determinative question on appeal is whether the Statute of Limitations was tolled by the "continuous treatment" doctrine. Under that doctrine, which has been applied to non-medical professional malpractice, "the time in which to bring a malpractice action is stayed 'when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint' " *(McDermott v Torre,* 56 NY2d 399, 405, quoting from *Borgia v City of New York,* 12 NY2d 151, 155; *see also,*

*Pierre-Louis v Ching Yuan Hwa,* 182 AD2d 55). Continuous treatment, however, " 'does not contemplate circumstances where a patient initiates return visits merely to have * * * [his or] her condition checked' *(McDermott v Torre, supra,* at 405). Routine examinations of a patient who appears to be in good health or diagnostic examinations, even when conducted repeatedly over a period of time, are not 'a course of treatment' " *(Massie v Crawford,* 78 NY2d 516, 520, quoting from *Charalambakis v City of New York,* 46 NY2d 785, 787). Sullivan, J. P., Lawrence, Copertino and Santucci, JJ., concur.