■ THELMA GARCIA-ALANO et al., Respondents, v GUTTMAN BREAST DIAGNOSTIC INSTITUTE, INC., Appellant, et al., Defendants.—Order, Supreme Court, New York County (Ira Gammerman, J.), entered on or about April 14, 1992, which, inter alia, denied the motion by defendant Guttman Breast Diagnostic Institute ("the Institute") to dismiss all claims for any negligence occurring prior to August 11, 1988 as time barred, unanimously modified, on the law, only to the extent of denying the motion as a matter of law and as so modified, the order is otherwise affirmed, without costs.

The then 39-year old plaintiff first visited the Guttman Institute on June 7, 1988 when she underwent a clinical breast examination and a mammogram. According to the July 18, 1988 report of the Institute's Medical Director, Selig Strax, M.D., a defendant in this medical malpractice action, the plaintiff was examined on June 7 and June 28, 1988 and the clinical examination demonstrated no lesion, but revealed dark pigmentation present near the right nipple. The mammography report stated: "Mass demonstrated in the upper central area of the right breast (probable cyst)." The report, which was addressed to a Dr. D. Coady, not named as a defendant, also stated: "FURTHER INVESTIGATION: IN THIS TYPE OF CASE WE SUGGEST SIX MONTHS RECALL, UNLESS YOU CONSIDER OTHERWISE."

Plaintiff was examined again at the Institute on December 13, 1988 and Dr. Strax's report dated December 29, 1988,

which was addressed to Dr. A. Brockunier, also named as a defendant, reflected that the clinical examination demonstrated no lesion. The mammography report stated:

"Mass demonstrated in the upper inner quadrant of the right breast (probable cyst). Benign calcifications, left breast. Comparison with previous studies shows no change (right breast).

"IN THIS TYPE OF CASE WE SUGGEST ONE YEAR RECALL, UNLESS YOU CONSIDER OTHERWISE.

"The patient was advised that her examination was within normal limits and we will notify her of a recall in one year."

Thereafter, on November 21 and December 1, 1989, plaintiff was reexamined at the Institute and Dr. Strax's report dated December 7, 1989, stated, in pertinent part:

"CLINICAL: Single, hard, fixed deep, discrete, 2.0 cm demonstrated near the 12 o'clock axis of the right breast. Fibrocystic changes, both breasts.

"MAMMOGRAPHY: Mass ($3.4 \times 3.2$ cm) with microcalcifications, suspicious of malignancy, demonstrated in the lower inner quadrant of the right breast. Due to technical changes a valid comparison with previous studies is not possible.

"RECOMMENDATION: FURTHER INVESTIGATION SUGGESTED: ASPIRATION/BIOPSY SUGGESTED BASED UPON CLINICAL AND RADIOLOGICAL GROUNDS."

As a result of this report, plaintiff was referred to Dr. David Sekons who recommended a biopsy of the cyst on plaintiff's right breast. Consequently, a diagnosis of malignancy was made and plaintiff underwent a modified radical mastectomy of her right breast.

In denying the Institute's motion to dismiss all claims for any negligence occurring prior to August 11, 1988 as time barred, the IAS Court was of the view that there is a question of fact for the jury to determine whether or not there was continuous treatment which would overcome the applicable 2½-year Statute of Limitations (CPLR 214-a).

We disagree and find, as a matter of law, that the series of examinations conducted by the Institute from June 1988 through December 1989 falls within the continuous treatment doctrine thus tolling the Statute of Limitations.

As held in *Nykorchuck v Henriques* (78 NY2d 255, 259): "CPLR 214-a explicitly requires that, for the toll to apply, the continuous treatment must be 'for the same illness, injury or condition which gave rise to the * * * act, omission or failure'

complained of *(see also, McDermott v Torre* [56 NY2d 399], at 405; *Borgia v City of New York* [12 NY2d 151], at 155 [the course of treatment must be 'related to the same original condition or complaint'])."

In the present case, there is nothing for a jury to determine regarding the issue of continuous treatment since it is undisputed that plaintiff's subsequent visits and examinations all related to her breasts and the growth and discoloration initially discovered. Moreover, the opinion of plaintiff's medical expert that mammographies cannot be treated as "separate and distinct", but must be viewed as a continuous course of treatment and diagnosis is supported by the Institute's own brochure entitled, "Breast Examination, Facts you should know about The Guttman Procedure", which states in pertinent part:

"Comparison of findings from one examination to another often helps us detect a problem not otherwise possible. That is why we recommend that you participate in our program at regular intervals all your life—or until we learn how to prevent breast cancer. That is why we urge you to keep in 'touch' with your breasts every month to notice any change that should alert you to come in to see us even before your next scheduled visit. That is why you should be aware that a problem may be found on your next visit or even before that even though your present examination is satisfactory.

"You should be aware that you may be asked to come back for re-evaluation of any questionable difference that is found in your breast. That difference may be on the clinical examination or the mammogram. If such a difference is present, we review all findings together in our attempt to be as careful as possible."

In addition to this general advice, plaintiff was specifically advised by the physicians who examined her at the Institute to return, first in six months and then in one year, for follow-up examinations. Clearly, the facts herein establish a course of continuous treatment and not isolated breast examinations *(cf., Nykorchuck v Henriques, supra).* Concur—Carro, J. P., Ellerin, Kupferman, Kassal and Rubin, JJ.