■ DENISE SINCLAIR et al., as Coexecutrices of FLORENCE S. KOURLAND, Deceased, Appellants, v WILLIAM G. CAHAN et al., Respondents. [657 NYS2d 698] —Order, Supreme Court, New York County (Stanley Sklar, J.), entered June 20, 1996, insofar as it denied plaintiffs' motion to amend the complaint to add a cause of action for wrongful death, and to strike defendants' Statute

of Limitations affirmative defenses, and granted defendants' cross motions for partial summary judgment dismissing as time-barred all claims based on acts or omissions that occurred more than $2^1/2$ years before the filing of the summons and complaint, i.e., September 18, 1990, unanimously modified, on the law, to the extent of granting plaintiffs' motion to amend and to strike with respect to defendant Dr. Ledger and denying said defendant's cross motion, and otherwise affirmed, without costs.

Plaintiffs' decedent, complaining of pain and insensitivity in her left breast, first saw defendant Dr. Cahan, a thoracic surgeon, in January 1980. Since 1975, she had had a cyst in that breast, which was aspirated five days before seeing Dr. Cahan, and she had undergone several mammograms. From then on, Dr. Cahan saw her periodically.

In July 1980 the decedent's condition was unchanged, and a chest X-ray was negative. The next office visit was in June 1982, with no noticeable change. The mammography report indicated a slightly larger left breast with more glandular element, but no localized masses or tissue calcification. In October 1983, the decedent was warned about her smoking habit (three packs per day). In June 1985 the decedent complained of pain after wearing a wired bra, but breast examination was negative. Dr. Cahan did not see the decedent again until June 1989. A mammogram report from that visit indicated "no focal or dominant masses * * * no malignant appearing calcifications or secondary signs of malignancy * * * no suspicious findings."

In December 1989 the decedent began seeing Dr. Ledger, a gynecologist, who took her history and examined her breasts, finding no masses. Due to her post-menopausal state, physical inactivity and heavy smoking, Dr. Ledger discussed the possibility of the decedent taking the hormones Premarin and Provera in low doses, to prevent osteoporosis and cardiovascular disease. These hormones can conceivably enhance the risk of breast cancer in a patient with a fibrocystic condition. The decedent took this hormone treatment from August 31 until October 12, 1990.

When Dr. Cahan next examined the decedent in October 1991, he detected a mass and decided to excise it immediately, regardless of what the ordered mammogram would show. A sonogram revealed the mass to be a solid, 2-centimeter nodule with no architectural irregularities or microcalcifications indicating malignancy. The excised nodule was biopsied nonetheless, showing positive for carcinoma. A lumpectomy was performed in November 1991, and the pathology report re-

vealed that cancer had invaded the lymph glands. Chemotherapy and radiation treatment began in early 1992.

This action for malpractice was commenced in March 1993. The decedent was last hospitalized in July 1994, and died three days later from pneumonia.

The Statute of Limitations for medical malpractice is $2^1/_2$ years from the act, omission or failure complained of, or the "last treatment where there is continuous treatment for the same illness * * * or condition" (CPLR 214-a). The continuous treatment doctrine applies only to "treatment for the same or related illnesses * * * continuing after the alleged acts of malpractice, not mere continuity of a general physician-patient relationship" (*Borgia v City of New York*, 12 NY2d 151, 157). Return visits on the patient's initiative, merely for the purpose of having her condition checked, are not sufficient to invoke the doctrine (*McDermott v Torre*, 56 NY2d 399, 405), nor are routine diagnostic examinations (*Massie v Crawford*, 78 NY2d 516, 520). Frequency and intensity of a course of treatment or monitoring of condition are the keys to the continuous treatment doctrine (*cf.*, *Williams v Health Ins. Plan*, 220 AD2d 343; *Djordjevic v Wickham*, 200 AD2d 421; *Garcia-Alano v Guttman Breast Diagnostic Inst.*, 188 AD2d 262, *lv dismissed* 81 NY2d 1007).

Clearly, the statute does not preclude a suit for malpractice or negligence related to the treatment in October 1991. But on this record there was no malpractice at that time. Upon detecting a mass, Dr. Cahan moved ahead with all deliberate speed, deciding to excise it regardless of what the results of diagnostic testing might show. Indeed, the biopsy of the excised nodule gave the first indication of a cancerous condition.

There is nothing in this record that will allow plaintiffs to leap the 28-month chasm back to June of 1989 (and presumably even further) to establish a "course of treatment" under the continuous treatment doctrine. Plaintiffs' medical expert opined that the nodule excised in 1991 was the same cyst that the decedent had had in her left breast since 1975, which had been brought to Dr. Cahan's attention on the first visit back in 1980. But just keeping an eye on this development during sporadic visits over the next ten years did not establish "continuous treatment" for a precancerous condition (*Nykorchuck v Henriques*, 78 NY2d 255). The June 1989 examination, which itself was fully four years after the previous examination with negative indications, was simply the latest in a series of discrete, routine visits. The 1989 examination and mammogram gave no indication of cause for concern. Absent any such

indication, there is no link with the first real indication of trouble in 1991.

With respect to Dr. Ledger, on the other hand, the decedent was in the midst of the prescribed hormone treatment at the point $2^1/2$ years prior to her commencement of this action (September 1990). The continuous treatment doctrine would thus extend the Statute of Limitations with regard to Dr. Ledger back to December 1989, when hormone treatment was first considered for this patient. Furthermore, the opinion of plaintiffs' medical expert that the prescription of hormones directly contributed to the metastasis of the decedent's breast cancer constitutes a sufficient evidentiary showing to support adding a cause of action for wrongful death (*Layz v City of New York,* 205 AD2d 460). Concur—Murphy, P. J., Wallach, Mazzarelli and Andrias, JJ.