■ TEODORA IRIZARRY, Appellant, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Respondent. [701 NYS2d 399] —Order, Supreme Court, Bronx County (Douglas McKeon, J.), entered September 10, 1998, which, *inter alia*, granted defendant's cross-motion to renew and reargue its prior cross-motion to dismiss the complaint and thereupon granted defendant's cross-motion to dismiss, and denied, as moot, the now-deceased plaintiff's son's motion for leave to serve an amended summons and complaint, unanimously reversed, on the law, without costs or disbursements, the motion granted and the cross-motion denied.

In March 1992, defendant New York City Health and Hospitals Corporation (NYCHHC) moved to dismiss the complaint in this medical malpractice action on the ground of failure to serve a timely notice of claim. The plaintiff opposed the motion, alleging continuous treatment which rendered her claim timely. On March 20, 1995, three years later, the IAS Court denied the motion, finding issues of fact as to whether the plaintiff had been continuously treated during the period November 1989 to August 1990. NYCHHC's subsequent cross-motion for summary judgment dismissing the complaint was, by order of October 6, 1997, also denied. Ultimately, on December 14, 1995, the plaintiff died of the condition that is the subject of the malpractice claim. When the deceased's son moved to be substituted as Administrator of his mother's estate and to amend the complaint to add a cause of action for wrongful death, NYCHHC cross-moved to renew and reargue the motion to dismiss that had been denied in 1997, citing as a basis therefor a recent change in the law as reflected in a February 1998 Court of Appeals decision in *Young v New York City Health & Hosps. Corp.* (91 NY2d 291). NYCHHC urged that under *Young*, plaintiff's claim for the failure to advise her of abnormal mammography results accrued on the date that the defendant learned of the result, rather than the date on which the result was communicated to the plaintiff. The IAS Court granted the cross-motion to dismiss, holding that the *Young* decision was controlling and necessitated dismissal of the com-

plaint. Leave to amend the complaint was denied as moot. We reverse.

Plaintiff's counsel, citing *Matter of Huie (Furman)* (20 NY2d 568), argues that NYCHHC's cross-motion, in reality one to reargue based on a change in the law, was untimely since it constituted a second attempt to reargue 1995 and 1997 orders, years after the time to appeal from said orders had expired. While, generally, an untimely motion for reargument must be denied (*supra,* at 572), an exception has been recognized where, as here, the basis of the prior order has subsequently been overturned. In such a case, reargument, based on the change in the law, "is proper even if the period within which to appeal the prior order ha[s] expired." (*Foley v Roche,* 86 AD2d 887, *lv denied* 56 NY2d 507; *accord, Dreifuss v Cohen,* 177 AD2d 682.)

As to the merits, the claim is based on an alleged failure to diagnose breast cancer in a timely manner, which resulted in a delay in conducting a biopsy and surgery, leading to an unimpeded growth of the cancer and the patient's death in December 1995. The specific issue here is whether plaintiff's notice of claim filed with NYCHHC on November 26, 1990 was timely under the continuous treatment doctrine.

After an examination revealed an inverted nipple of the right breast, the deceased, then 62, underwent a mammogram on October 31, 1989. A November 17, 1989 report of the mammogram noted that the deceased had a mass, "highly suspicious" of breast cancer. Unfortunately, these findings were not communicated to the deceased until August 21, 1990 because, allegedly, the results of the mammogram had not been sent to her physicians before that date. As the record shows, the deceased continued to be treated by NYCHHC physicians. On December 6, 1989, the deceased returned to the NYCHHC clinic for the purpose of mammography follow-up. Dr. Gagalang told her that, since he did not receive anything from "upstairs", he thought that everything was all right. The deceased was subsequently treated at the clinic on various occasions, including December 19, 1989, January 3, 1990, March 7, 1990 and June 5, 1990. On none of these occasions between December 6, 1989 and August 21, 1990 was the deceased told of any abnormal results in her mammogram. As the deceased explained, "I again asked Dr. Gagalang if he had received the mammogram results. He again responded that he had not received the results and, therefore, he assumed that everything was okay."

The purpose of the continuous treatment doctrine is to "maintain the physician-patient relationship in the belief that

the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure." (*McDermott v Torre*, 56 NY2d 399, 408.) For the doctrine to apply, the course of treatment must be related to the same condition that gives rise to the malpractice claim. (*Nykorchuck v Henriques*, 78 NY2d 255, 258.) As this record shows, as far as the deceased was concerned, whether she needed further treatment of her breast condition was never resolved or disposed of until the mammogram's results became available to her treating physicians and could be read. We believe that this circumstance distinguishes this case from *Young v New York City Health & Hosps. Corp.* (91 NY2d 291, 297, *supra*), which itself noted that "[a]dditionally, plaintiff never inquired about the mammography results or brought further complaints to her physician's attention." Thus, a question of fact exists as to whether there was ongoing continuous treatment during the critical period from November 17, 1989 to August 21, 1990. On this record it could be concluded that the deceased remained under the care and treatment of NYCHHC's physicians while she awaited the mammography results. If that were to be determined, then plaintiff's November 26, 1990 notice of claim was timely.

We also note that plaintiff alleges a separate and independent malpractice beginning in August 1990, when the deceased was advised of the mammography results, until a mastectomy was performed on October 18, 1990. Plaintiff's claim that this inexplicable delay constitutes malpractice presents a further issue of fact warranting reversal. Concur—Sullivan, J. P., Nardelli, Mazzarelli, Lerner and Buckley, JJ.