■ NATALYA OKSMAN, Respondent, v CITY OF NEW YORK et al., Appellants, et al., Defendants. [705 NYS2d 360] —Order, Supreme Court, Bronx County (Lucindo Suarez, J.), entered October 2, 1998, which denied the City of New York's motion for summary judgment seeking dismissal of the plaintiff's complaint for plaintiff's failure to serve a timely Notice of Claim and summons and complaint, unanimously affirmed, without costs.

In December of 1994, plaintiff, age 75, was treated for hypertension, status-post cardiovascular accident and angina at the medical clinic of Jacoby Hospital (the Hospital), a facility operated by defendant New York City Health and Hospitals Corporation (HHC). During a January 5, 1995 return visit, a breast exam was performed on plaintiff and despite a negative result, she was referred for a mammogram which was performed in the next month. The study was interpreted on February 27, 1995 to show "a lobulated left upper outer quadrant soft tissue density, benign in appearance, and with no microcalcifications." At a March 3, 1995 return visit, plaintiff was informed that her mammogram was negative. On March 19, 1996, plaintiff returned to the Hospital complaining of pain in her left breast; a second mammogram was performed which revealed a suspicious mass, and an April 5, 1996 biopsy confirmed that plaintiff had breast cancer.

On June 6, 1996, plaintiff filed a Notice of Claim against the City of New York, HHC and the Hospital. Plaintiff filed a Summons and Complaint with the Bronx County Clerk on October 23, 1996 which was served on defendants-appellants on or about November 12, 1996. Plaintiff asserted two causes of action against HHC and the City, both of which are predicated upon HHC's alleged failure to timely diagnose and treat her condition. The municipal defendants then moved to amend their answer to raise the affirmative defense of Statute of Limitations based on the date of the alleged failure to diagnose breast cancer on February 27, 1995, and to dismiss the action as against the municipal defendants. The municipal defendants have sought summary judgment upon the ground that the alleged misdiagnosis was made on February 27, 1995, more than one year and 90 days prior to the filing of plaintiff's Notice of Claim.

The IAS Court granted the motion to amend the pleadings, but denied the municipal defendants' summary judgment motion on the ground that a triable issue of fact exists, namely that the continuing visits, between March 1995 and March 1996, may, or may not, have been in response to the negative

mammogram results. Such continuing visits, in the IAS Court's view, may have thereby constituted a continuous course of treatment as to the original complaint. Since monitoring may be considered treatment for tolling purposes (*Pace v Caron*, 232 AD2d 617; *Stilloe v Contini*, 190 AD2d 419, 420) and since the facts regarding the purpose and nature of this monitoring are in dispute, the IAS Court must be affirmed.

The record discloses that during the period from March 4, 1995 through March 18, 1996, plaintiff visited the clinic on about fifteen days for the treatment of various conditions and complaints, including anxiety, dizziness, depression, hearing loss, angina, heart problems, hypertension, degenerative joint disease, insomnia, right-sided abdominal pain, and a bump behind the ear. After a stress test and an EKG, tissue behind the ear was excised. The medical records of visits between March 4, 1995 and March 18, 1996 contain no indication that the continuing visits constituted a course of treatment of the prior complaint regarding her left breast. They contain no entry regarding plaintiff's breasts, including breast pain, or care, treatment, examination, or re-examination of her breasts, or mammograms. They memorialize no complaints by plaintiff regarding her left breast. The record evidence is not, however, necessarily consistent with defendants' view that there was no continuing relationship of trust and confidence between plaintiff and them with respect to the complaint she initially raised, which, with the aid of hindsight, appears to have been confirmed as a symptom of disease requiring treatment. Plaintiff's affidavit states that her doctors advised her they would "keep an eye on" lobulated soft tissue density in her left breast, the location of her complaints. The doctor's report on February 27, 1995 specifically indicated "routine follow up recommended". Plaintiff further states that she made complaints at subsequent appointments.

In order to maintain an action against HHC, plaintiff must satisfy a condition precedent to suit by filing a timely notice of claim (*Matter of Daniel J. v New York City Health & Hosps. Corp.*, 77 NY2d 630, 633). General Municipal Law § 50-e (1) requires the filing of a notice of claim within 90 days after the claim arises or the cause of action accrues. Commencement of an action against HHC and its employees is governed by section 7401 of McKinney's Unconsolidated Laws of NY (New York City Health and Hospitals Corporation Act § 20; L 1969, ch 1016, § 1, as amended) and General Municipal Law § 50-i, which require that an action against a public corporation be commenced within one year and 90 days of the accrual of the

claim. In a medical malpractice action, the cause of action accrues on the date when the alleged malpractice occurred or upon termination of a series of wrongful acts or omissions. (*See, Matter of Daniel J. v New York City Health & Hosps. Corp.*, *supra*, 77 NY2d, at 634; *McDermott v Torre*, 56 NY2d 399.)

The monitoring of an abnormality to ascertain the presence or onset of a disease or condition may constitute treatment for purposes of tolling the Statute of Limitations (*Young v New York City Health & Hosps. Corp.*, 91 NY2d 291, 296; *Nykorchuck v Henriques*, 78 NY2d 255, 260-261 [Kaye, J., dissenting]). A patient's treatment does not necessarily end with the last visit with the physician but may continue when further treatment is contemplated (*Richardson v Orentreich*, 64 NY2d 896, 898-899). While sporadic visits or mere discussions of possible treatments may not suffice as "monitoring" (*Quinones v Waltz*, 258 AD2d 420), an agreement between physician and patient to continue observation of suspicious breast tissue may constitute sufficient monitoring to support a finding of continuous treatment (*Pace v Caron*, 232 AD2d 617, *supra*). This is not a case where it is alleged that "mere monitoring" happened over an extremely lengthy period of time (*Ganess v City of New York*, 207 AD2d 765, 769, *affd* 85 NY2d 733). The monitoring here was part and parcel of the physician's use of the mammogram and contemplated active observation by the physician based upon contemporaneous complaints by the patient; the course of treatment, i.e., follow up monitoring, was related to the original complaint (*Djordjevic v Wickham*, 200 AD2d 421), as were the subsequent patient complaints. Here, not only does plaintiff allege subsequent complaints within a short period of time following her mammogram, but the medical records verify her physician's agreement with her to provide follow up monitoring. There is at least an unresolved dispute of fact regarding the frequency and intensity of monitoring which warrants denial of the motion for summary judgment (*Sinclair v Cahan*, 240 AD2d 152, 153; *compare, Dolfini v Morilla*, 261 AD2d 431, *with Garcia-Alano v Guttman Breast Diagnostic Inst.*, 188 AD2d 262, 264, *lv dismissed* 81 NY2d 1007). Concur—Rosenberger, J. P., Williams, Tom, Mazzarelli and Buckley, JJ.