■ PAMELA K. NORUM, Appellant, v THOMAS LANDAU, Respondent. [802 NYS2d 723]—

In an action to recover damages for medical malpractice, wrongful death, and conscious pain and suffering, the plaintiff appeals from so much of an order of the Supreme Court, West-

chester County (Donovan, J.), dated April 5, 2004, as granted that branch of the defendant's motion which was to dismiss her claims as to any negligent act or omission occurring prior to December 25, 1999.

Ordered that the order is modified, on the law, by deleting from the second decretal paragraph thereof the date "December 25, 1999," and substituting therefor the date "December 25, 1998"; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements, and the plaintiff's claims as to any negligent act or omission occurring on or after December 25, 1998, are reinstated.

The plaintiff's decedent died from sudden cardiac arrest on June 26, 2001. The plaintiff commenced this action on June 25, 2002, alleging, inter alia, that the defendant doctor failed to timely diagnose and treat congestive heart failure, cardiomyopathy, and cardiac arrhythmia. The complaint alleged negligent acts and omissions by the defendant since the decedent's first visit with the defendant on July 22, 1991, until the date of his death. The decedent's last visit with the defendant was on September 8, 1999. The defendant moved for leave to amend his answer to include an affirmative defense that the action was barred in part by the statute of limitations, and to dismiss each and every allegation of negligent treatment prior to December 25, 1999, as time-barred. The Supreme Court rejected the plaintiff's contention that the continuous-treatment doctrine applied to toll the applicable statute of limitations, and granted the defendant's motion.

The Supreme Court improperly determined that the statute of limitations barred claims to recover damages for medical malpractice prior to December 25, 1999 (i.e., $2^{1}/_{2}$ years before the date the action was commenced), rather than December 25, 1998 (i.e., $2^{1}/_{2}$ years before the date of the decedent's death). Since, at the time of his death, the decedent had a valid cause of action to recover damages for medical malpractice, and since the wrongful death cause of action was commenced within two years of the date of his death, the wrongful death claim was timely commenced (*see Murphy v Jacoby,* 250 AD2d 826 [1998]; *Suarez v Phelps Mem. Hosp. Assn.,* 130 AD2d 571 [1987]). Accordingly, any claims to recover damages for medical malpractice which accrued on or after December 25, 1998 (*i.e.,* within $2^{1}/_{2}$ years of the decedent's death), including the decedent's visit on September 8, 1999, were timely (*see* CPLR 210 [a]; *Fritz v Southside Hosp.,* 182 AD2d 671 [1992]). Further, the plaintiff then had one year from the decedent's death to assert a cause of action alleging conscious pain and suffering (*see* CPLR 210 [a]; *Fritz v Southside Hosp., supra*).

However, the plaintiff failed to establish that the annual physical examinations rendered by the defendant prior to December 25, 1998, constituted a continuous course of treatment. Pursuant to CPLR 214-a, the statute of limitations is tolled until after the patient's last visit " 'when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint' " (*McDermott v Torre,* 56 NY2d 399, 405 [1982], quoting *Borgia v City of New York,* 12 NY2d 151, 155 [1962]). Routine diagnostic examinations, even when conducted repeatedly over a period of time, are not a course of treatment (*see Massie v Crawford,* 78 NY2d 516, 520 [1991]; *Charalambakis v City of New York,* 46 NY2d 785, 787 [1978]). Further, return visits on the patient's initiative, merely for the purpose of having his condition checked, are not sufficient to invoke the doctrine (*see McDermott v Torre, supra; Sinclair v Cahan,* 240 AD2d 152 [1997]). The evidence established that before the decedent's visit on September 8, 1999, there was no diagnosis and no treatment of any alleged cardiac abnormality and, therefore, no course of treatment for this condition was undertaken prior to that date (*see Nykorchuck v Henriques,* 78 NY2d 255 [1991]; *Fisher v Felix,* 201 AD2d 453, 454 [1994]). Prudenti, P.J., Florio, Cozier and Lifson, JJ., concur.