■ MARY ANNE SOSNOFF et al., Appellants-Respondents, v LAWRENCE S. JACKMAN, Defendant, MARJORIE S. ROSENBLATT, Respondent-Appellant, and WHITE PLAINS HOSPITAL CENTER, Respondent. [845 NYS2d 391]—

In an action, inter alia, to recover damages for medical malpractice, etc., the plaintiffs appeal, as limited by their brief, from so much of an order of the Supreme Court, Westchester County (LaCava, J.), entered July 12, 2006, as granted that branch of the motion of the defendants White Plains Hospital Center and Marjorie S. Rosenblatt which was for summary judgment dismissing the complaint insofar as asserted against the defendant White Plains Hospital Center, and the defendant Marjorie S. Rosenblatt cross-appeals from so much of the same order as denied that branch of the motion which was for summary judgment dismissing the complaint insofar as asserted against her.

Ordered that the order is modified, on the law, by deleting the provision thereof granting that branch of the motion of the defendants White Plains Hospital Center and Marjorie S. Rosenblatt which was for summary judgment dismissing the cause of action predicated on a theory of vicarious liability insofar as asserted against the defendant White Plains Hospital Center, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, with one bill of costs payable to the plaintiffs by the defendants White Plains Hospital Center and Marjorie S. Rosenblatt.

In May 1996 the plaintiff Mary Anne Sosnoff (hereinafter the plaintiff) consented to participate in a research study conducted at White Plains Hospital Center (hereinafter the Hospital), concerning early detection of ovarian cancer in patients with family history of such cancer. Approximately every six months between 1996 and 2001, following the protocol of the research program, the plaintiff was examined by doctors, including the defendant Dr. Lawrence Jackman, to whom she was referred by the research program, and underwent diagnostic tests, including intravaginal sonograms, which were performed at the Hospital. The defendant Dr. Marjorie S. Rosenblatt interpreted the five ultrasounds performed at the Hospital prior to August 7, 2000, and a sonogram performed on September 28, 2000. In February 2001 the plaintiff was diagnosed with Stage 3C uter-

ine or endometrial cancer with involvement of the ovaries and lymph system.

On February 6, 2003 the plaintiff and her husband commenced the instant action against, among others, the Hospital, Dr. Jackman, and Dr. Rosenblatt, alleging that they negligently failed to diagnose her cancer in the early stages. Following discovery, the Hospital and Dr. Rosenblatt moved for summary judgment dismissing the complaint in its entirety insofar as asserted against them, or for partial summary judgment dismissing, as time-barred, the claims arising from alleged malpractice that occurred before August 7, 2000. The Supreme Court granted the motion as to the Hospital on the ground that it had established the absence of a hospital-patient relationship, and denied the motion as to Dr. Rosenblatt, finding that there were issues of fact as to whether a physician-patient relationship existed and whether the continuous treatment doctrine tolled the running of the statute of limitations.

The Supreme Court correctly determined that there is an issue of fact as to whether a physician-patient relationship arose as a result of Dr. Rosenblatt's interpretation of radiological films for the plaintiff, thus precluding summary judgment dismissing the complaint as to Dr. Rosenblatt (*see Raptis-Smith v St. Joseph's Med. Ctr.*, 302 AD2d 246, 247 [2003]; *see generally*, Morreim, *The Clinical Investigator as Fiduciary: Discarding a Misguided Idea*, 33 JL Med & Ethics 586 [Fall 2005]). Further, an issue of fact exists as to whether the continuous treatment doctrine applies. As a general rule, discrete, intermittent diagnostic services rendered by a radiologist are not part of a continuous course of treatment, unless such services consist of "periodic diagnostic examinations" that have been "prescribed as part of ongoing care for a plaintiff's existing condition" (*Elkin v Goodman*, 285 AD2d 484, 486 [2001]; *cf. Nykorchuck v Henriques*, 78 NY2d 255, 258-259 [1991]). In this case, there is an issue of fact as to whether the sonograms performed on the plaintiff pursuant to the protocol for the cancer detection research study were also prescribed to monitor her condition as a patient at high risk for ovarian cancer (*see Mosezhnik v Berenstein*, 33 AD3d 895, 896 [2006]; *Prinz-Schwartz v Levitan*, 17 AD3d 175, 178-179 [2005]; *Melup v Morrissey*, 3 AD3d 391 [2004]; *Kurland v McElwain*, 231 AD2d 685, 686 [1996]).

However, the Supreme Court erred in determining that the Hospital established the absence of any hospital-patient relationship. There is evidence in the record that when the plaintiff agreed to participate in the research program, she was not

merely a subject or control person (*see Payette v Rockefeller Univ.*, 220 AD2d 69, 72 [1996]). Rather, she expected to receive medical treatment and services, and she reasonably accepted services from the physicians to whom she was assigned "with the expectation that proper professional skill would be employed" and that she could rely upon them for a proper diagnosis of her condition if she developed a malignant condition during the time they were regularly examining her (*Bradley v St. Charles Hosp.*, 140 AD2d 403, 404 [1988]; *see Raptis-Smith v St. Joseph's Med. Ctr.*, 302 AD2d at 247).

There is no evidence that the Hospital or any of its staff members were negligent and, therefore, summary judgment was properly granted with respect to the allegation of direct negligence against the Hospital. However, there are issues of fact as to whether the Hospital may be held vicariously liable for any malpractice that may have been committed by the defendant physicians under the doctrine of apparent or ostensible agency. There is evidence that conduct on the part of the Hospital led the plaintiff reasonably to believe that the defendant physicians were provided by the Hospital or acting on its behalf, and that she accepted their services in reliance upon the perceived relationship (*see Dragotta v Southampton Hosp.*, 39 AD3d 697, 698 [2007], citing *Hallock v State of New York*, 64 NY2d 224, 231 [1984]; *Contu v Albert*, 18 AD3d 692, 693 [2005]; *Halkias v Otolaryngology-Facial Plastic Surgery Assoc.*, 282 AD2d 650, 651 [2001]). Crane, J.P., Lifson, Carni and Balkin, JJ., concur.