# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**706**
**CA 14-01040**
PRESENT: SCUDDER, P.J., CARNI, SCONIERS, AND VALENTINO, JJ.

---

CATHERINE FLINT, ADMINISTRATOR OF THE GOODS,
CHATTELS AND CREDITS OF MARIE SMITH, DECEASED,
PLAINTIFF-APPELLANT,

V                                                            MEMORANDUM AND ORDER

ROBERT ZIELINSKI, M.D., DEFENDANT-RESPONDENT,
ET AL., DEFENDANT.

---

HOGAN WILLIG, PLLC, AMHERST (SCOTT DUQUIN OF COUNSEL), FOR
PLAINTIFF-APPELLANT.

CONNORS & VILARDO, LLP, BUFFALO (MOLLIE C. MCGORRY OF COUNSEL), FOR
DEFENDANT-RESPONDENT.

---------------------------------------------------------------------------------------------

        Appeal from an order of the Supreme Court, Niagara County
(Richard C. Kloch, Sr., A.J.), entered February 13, 2014.  The order
granted the motion of defendant Robert Zielinski, M.D., for summary
judgment dismissing the complaint against him.

        It is hereby ORDERED that the order so appealed from is
unanimously reversed on the law without costs, the motion is denied
and the complaint is reinstated against defendant Robert Zielinski,
M.D.

        Memorandum:  Marie Smith (decedent) commenced this medical
malpractice action on November 18, 2008, alleging, inter alia, that
Robert Zielinski, M.D. (defendant) "failed to take necessary,
immediate and timely steps to diagnose [cancer in her lung]."
Following decedent's death, Catherine Flint (plaintiff) was
substituted as the plaintiff in the action.  Defendant moved for
summary judgment dismissing the complaint against him, contending that
plaintiff's claims were barred by the statute of limitations.
Specifically, defendant contended that the malpractice cause of action
was based on his failure to take any steps to diagnose decedent's lung
cancer in light of certain findings contained in a May 2, 2006 CT
scan, which was more than two and one-half years before the action was
commenced (see CPLR 214-a).  Defendant further contended that he never
established a course of treatment for lung cancer and, therefore, the
continuous treatment doctrine would not apply.

        Supreme Court granted that motion, and we now reverse.  It is
well settled that "a medical malpractice action must be commenced
within 2 ½ years from the date 'of the act, omission or failure

complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to said act, omission or failure' " (*Young v New York City Health & Hosps. Corp.*, 91 NY2d 291, 295, quoting CPLR 214-a [emphasis omitted]).  A medical malpractice "cause of action accrues on the date when the alleged original negligent act or omission occurred" (*id.*); "subsequent continuous treatment does not change or extend the accrual date but serves only to toll the running of the applicable [s]tatute of [l]imitations" (*Matter of Daniel J. v New York City Health & Hosps. Corp.*, 77 NY2d 630, 634).  Here, the cause of action accrued on May 5, 2006, when defendant made the decision to forgo any follow-up procedures after reading the results of the May 2, 2006 CT scan.  We thus conclude that defendant "established [his] prima facie right to summary judgment by demonstrating that [decedent] commenced this action more than 2½ years after the . . . allegedly negligent act[] or omission[] . . . The burden then shifted to plaintiff to show triable issues of fact with respect to the application of the continuous treatment doctrine" (*Waring v Kingston Diagnostic Radiology Ctr.*, 13 AD3d 1024, 1025; *see Cox v Kingsboro Med. Group*, 88 NY2d 904, 906).  We conclude that plaintiff, who relied on medical records submitted by defendant in support of the motion, raised such a triable issue of fact.

The medical records establish that, after decedent was diagnosed with breast cancer in April 2005 and underwent a modified radical mastectomy, she was referred to defendant, an oncologist, for "consultation."  Defendant first saw decedent on May 20, 2005, at which time they discussed various treatment options, including chemotherapy.  Based on decedent's age and "significant co-morbidities," they "opted against pursuing chemotherapy."  Instead, defendant agreed to "monitor" decedent for a recurrence, i.e., metastasis, of the disease.  Decedent had numerous appointments with defendant from May 2005 through December 2007, and at each appointment defendant would monitor decedent for a recurrence or metastasis of the cancer.  In his deposition, which was submitted in support of his motion, defendant testified that the most common places for breast cancer to metastasize are "[t]he remaining regional lymph nodes, the bone, *the lung*, the liver, [and the] brain" (emphasis added).  Decedent developed cancer in her lung, and we agree with plaintiff that there is a triable issue of fact whether defendant was continuously treating decedent for the same illness, injury or condition giving rise to the action.

While the failure to establish a course of treatment cannot be deemed a course of treatment (*see Nykorchuck v Henriques*, 78 NY2d 255, 259), it is well settled that "[t]he monitoring of an abnormality to ascertain the presence or onset of a disease or condition may constitute treatment for purposes of tolling" the statute of limitations (*Oksman v City of New York*, 271 AD2d 213, 215; *see Reiter v Sartori*, 2 AD3d 1412, 1413; *see also Cherise v Braff*, 50 AD3d 724, 726; *Dolce v Powalski*, 13 AD3d 1200, 1201).  That includes the monitoring of patients who are at high risk for developing cancer for the onset of the disease (*see e.g. Sosnoff v Jackman*, 45 AD3d 568,

569-570, *lv dismissed* 10 NY3d 885; *Melup v Morrissey*, 3 AD3d 391, 391). Indeed, the CT scan at issue was ordered as part of defendant's "continuing efforts . . . to treat a particular condition," i.e., to monitor the potential appearance of cancer in decedent's chest area (*Massie v Crawford*, 78 NY2d 516, 519, *rearg denied* 79 NY2d 978).

Contrary to defendant's contention, *Ceglio v BAB Nuclear Radiology, P.C.* (120 AD3d 1376) does not require a different result. In that case, the radiology defendants were monitoring the plaintiff husband for "postsurgical changes" following the removal of a pituitary tumor, and they allegedly failed to notice a colloid cyst on an MRI (*id.* at 1377). Inasmuch as the plaintiffs "presented no evidence to suggest that the colloid cyst, which allegedly caused the injuries complained of, was in any way connected to the pituitary changes for which the radiology defendants were monitoring [the plaintiff husband]" (*id.*), the Second Department concluded that the plaintiffs had failed to raise a question of fact whether the plaintiff husband had received continuous treatment.

Here, as opposed to *Ceglio*, the evidence established that defendant was monitoring decedent for the appearance of cancer in her chest area. Decedent developed cancer in her chest area, a cancer that was allegedly identifiable on a CT scan ordered by defendant to rule out the presence of cancer in decedent's chest. We thus conclude that there is an issue of fact whether defendant's monitoring of decedent's chest area for cancer and his relationship with her from May 2005 until December 2007 "amounted to continuous treatment of the same original condition or complaint," regardless of whether the cancer that developed in decedent's lungs was a primary lung cancer or a metastasis of the breast cancer (*Mandel v Herrmann*, 271 AD2d 661, 662; *cf. Perrino v Maguire*, 60 AD3d 1475, 1476-1477; *Trimper v Jones*, 37 AD3d 1154, 1155-1156).

Entered:  July 2, 2015                          Frances E. Cafarell
                                                Clerk of the Court