■ JEROME ELKIN et al., Appellants, v JACK GOODMAN et al., Defendants, and RUSSELL KARP et al., Respondents. [727 NYS2d 158] —In an action to recover damages for medical malpractice, etc., the plaintiffs appeal from an order of the Supreme Court, Dutchess County (Pagones, J.), dated March 21, 2000, which

granted the motion of the defendants Russell Karp and Dutchess Radiology Associates, P. C., for summary judgment dismissing the complaint insofar as asserted against them.

Ordered that the order is reversed, on the law, with costs, the motion is denied, and the complaint is reinstated insofar as asserted against the respondents.

The plaintiff Jerome Elkin was diagnosed with an acoustic neuroma in May 1992. The defendant Dr. Jack Goodman, Mr. Elkins' neurosurgeon, recommended monitoring the tumor's growth rather than surgically removing it at that time. Dr. Goodman referred Mr. Elkin to the defendant Dutchess Radiology Associates, P. C. (hereinafter DRA), for regular and continuous MRIs to determine any changes in the acoustic neuroma. MRIs were conducted in May 1992, December 1992, July 1993, June 1994, and August 1995. Each time he went for an MRI, Mr. Elkin presented himself to DRA facilities. Each time an MRI was taken, a radiologist read the MRI films, compared them with those previously taken, generated a report, and sent copies of the report and films to Dr. Goodman. It appears that Dr. Goodman read the reports, but also reviewed the films on his own. DRA retained its own copies of Mr. Elkin's MRI films. Subsequent to May 1992, each report completed by DRA radiologists stated that the tumor had not significantly changed in size and appearance. There is evidence in the record indicating that by December 1992, the tumor had grown to 2cm from 1.5cm and by August 1995 it had grown to 3cm. The MRI taken in August 1995 was read by the defendant Dr. Russell Karp.

In December 1995 Mr. Elkin's symptoms worsened and Dr. Goodman referred him to another neurosurgeon to determine if non-invasive radiosurgery could be performed. At that time, Dr. Goodman did not believe that Mr. Elkin was a candidate for conventional surgery, because of a renal condition he had developed in 1994. The specialist, however, found that radiosurgery could not be performed because the tumor was too large. In early 1996, Mr. Elkin underwent invasive surgery to remove the tumor.

On January 8, 1998, the plaintiffs commenced this action against, among others, DRA and Dr. Karp (hereinafter collectively the radiologists). Thereafter, the radiologists moved for summary judgment and argued that the action, as it relates to MRIs taken before August 1995, was barred by the Statute of Limitations. They also contended that, even if they had failed to detect an increase in the size of the tumor, this failure did not proximately cause Mr. Elkin's injuries.

A medical malpractice action must be commenced within two years and six months of the act, omission, or failure complained of, or the date of the last treatment where there is a continuous course of treatment for the same original condition or complaint (see, CPLR 214-a; Young v New York City Health & Hosps. Corp., 91 NY2d 291; Nykorchuck v Henriques, 78 NY2d 255; McDermott v Torre, 56 NY2d 399). The radiologists satisfied their burden as proponents of the motion for summary judgment by demonstrating the action was commenced more than 2½ years after all but the last visit. The burden then shifted to the plaintiffs to demonstrate a triable issue of fact with respect to the toll of the Statute of Limitations based upon the continuous treatment doctrine (see, Cox v Kingsboro Med. Group, 88 NY2d 904; Massie v Crawford, 78 NY2d 516, 519).

In the circumstances at bar, the applicability of the continuous treatment toll for the services of the radiologists cannot be determined as a matter of law. Generally, where a diagnostic service, such as the radiologists conducted, renders discrete, intermittent, medical services, this will not be considered continuous treatment (see, McDermott v Torre, supra; Davis v City of New York, 38 NY2d 257; Meier v Huntington Hosp. Assn., 186 AD2d 637, 638; Noack v Symenow, 132 AD2d 965, 966). By contrast, where, as here, periodic diagnostic examinations are prescribed as part of ongoing care for a plaintiff's existing condition that are explicitly anticipated by physician and patient alike, the continuous treatment toll can apply even to a diagnostic laboratory (see, Canter v East Nassau Med. Group, 270 AD2d 381; Kurland v McElwain, 231 AD2d 685; Greenberg v Schildkrout, 209 AD2d 583; cf., Young v New York City Health & Hosps. Corp., 91 NY2d 291, 296; Swift v Colman, 196 AD2d 150, 152).

In view of the relationship implicit in the record between the radiologists and Dr. Goodman, the continuous monitoring through periodic MRIs anticipated among Dr. Goodman, Mr. Elkin, and the radiologists, the unitary purpose for which Mr. Elkin periodically and regularly visited the radiologists, their comparison of the current MRI with Mr. Elkin's previous MRIs which they retained on file, and their furnishing of reports of each MRI to Dr. Goodman, it cannot be determined without a trial on which side of the continuous treatment line of authority this case falls.

Additionally, contrary to the radiologists' contention, issues of fact exist as to whether their failure to detect the increase in the tumor size was the proximate cause of Mr. Elkin's injuries.

Although Dr. Goodman testified that he did review the MRI films, it is unclear to what degree his concurrence with the radiologists' conclusion was influenced by the reports.

Furthermore, contrary to the radiologists' assertion, issues of fact exist as to whether or not Dr. Goodman would have recommended surgery had he been alerted earlier to the increase in size of the tumor and, whether radiosurgery would have been a viable option at that time. Accordingly, the Supreme Court erred in granting the radiologists' motion for summary judgment (*see, Alvarez v Prospect Hosp.*, 68 NY2d 320). Ritter, J. P., S. Miller, Friedmann and Crane, JJ., concur.