■ JEROME ELKIN et al., Appellants, v JACK GOODMAN et al., Respondents. [808 NYS2d 405]—

In an action to recover damages for medical malpractice, etc., the plaintiffs appeal from a judgment of the Supreme Court, Dutchess County (Pagones, J.) dated July 16, 2004, which, upon the granting of the defendants' motions to dismiss the complaint, made at the close of the plaintiffs' case, dismissed the complaint.

Ordered that the judgment is modified, on the law, by deleting the provision thereof dismissing the plaintiff's medical malpractice claims against Jack Goodman and Jack Goodman, M.D., P.C., for (1) allegedly misreading magnetic resonance imagings of the plaintiff's brain tumor between 1992 and 1995 and (2) failing to remove the tumor between 1994 and 1995; as so modified, the judgment is affirmed, with costs to the defendants Russell Karp and Dutchess Radiology Associates, P.C., payable by the plaintiffs, and costs to the plaintiffs payable by the defendants Jack Goodman and Jack Goodman, M.D., P.C., those claims are reinstated insofar as asserted against the defendants Jack Goodman and Jack Goodman, M.D., P.C., and the action against the remaining defendants is severed.

The salient facts concerning the medical malpractice claims of the plaintiff Jerome Elkin (hereinafter the plaintiff) are set forth in a prior appeal (see Elkin v Goodman, 285 AD2d 484 [2001]). In the prior appeal, we determined that summary judgment was improper where a question of fact existed as to whether the plaintiffs's medical malpractice claims against the defendants Russell Karp and Dutchess Radiology Associates, P.C. (collectively hereinafter DRA), were tolled by the continuous treatment doctrine. Following determination of that appeal, the parties proceeded to trial. The issue on this appeal is whether the trial court properly granted the defendants' motions to dismiss the complaint, made at the close of the plaintiff's proof.

A medical malpractice action must be commenced within two years and six months of the act, omission, or failure complained of (see CPLR 214-a), but may be tolled until the end of treatment if the plaintiff establishes that the defendant provided continuous treatment, which is defined as "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint" (Borgia v City of New York, 12 NY2d 151, 155 [1962]; see also Cooper v Kaplan, 78 NY2d 1103 [1991]). Here, the plaintiff was diagnosed with an acoustic neuroma in May 1992, and his internist referred him to the defendant Dr. Jack Goodman, a neurosurgeon, who in turn referred the plaintiff for periodic magnetic resonance imaging (hereinafter MRI) scans. DRA performed MRI scans on the plaintiff in May 1992, December 1992, July 1993, June 1994, and August 1995, and the plaintiff commenced this action on January 8, 1998. In general, where a diagnostician, such as a radiologist, performs a "discrete and complete" service, this will not be considered continuous treatment (see McDermott v Torre, 56 NY2d 399, 411 [1982]; Davis v City of New York, 38 NY2d 257 [1975]), unless the diagnostician "has a continuing or other relevant relationship with the patient," or "act[s] as an agent for the doctor or otherwise act[s] in relevant association with the physician" (McDermott v Torre, supra at 408).

The plaintiffs' evidence at trial did not establish a need to depart from the general rule. The evidence demonstrates that Dr. Goodman, the plaintiff's neurosurgeon, made the referrals for the plaintiff's MRI scans at DRA, which demonstrated that neither the plaintiff nor DRA anticipated that DRA would provide the plaintiff with ongoing treatment (cf. Young v New York City Health & Hosps. Corp., 91 NY2d 291 [1998]; Richardson v Orentreich, 64 NY2d 896 [1985]). In other words, the

plaintiff did not have an appointment with DRA unless and until Dr. Goodman scheduled that appointment on his behalf (*cf. Garcia-Alano v Guttman Breast Diagnostic Inst.*, 188 AD2d 262 [1992]). Moreover, the plaintiffs' proof at trial indicated that although DRA sent Dr. Goodman a copy of each MRI scan and the accompanying radiologist report, Dr. Goodman reviewed the DRA reports for each MRI scan, but made his own independent analysis as to the growth, if any, of the plaintiff's tumor. Further, based on his analysis, Dr. Goodman decided the appropriate course of treatment, such as to continue monitoring the tumor through further MRIs, perform surgery, or proceed with other alternatives. Moreover, DRA made no decisions as to the plaintiff's treatment (*cf. Pace v Caron*, 232 AD2d 617 [1996]). Under the circumstances, Dr. Goodman made his treatment assessments based on his own review of the MRIs and DRA reports, not in reliance on DRA's reports, and thus Dr. Goodman's treatment of the plaintiff cannot be imputed to DRA.

Further, although at least one radiologist at DRA reviewed prior MRIs when generating his MRI report, such conduct, standing alone, does not alter the fact that each MRI scan and DRA report was a complete and discrete service (*see Davis v City of New York, supra* at 260; *Solomonik v Elahi*, 282 AD2d 734 [2001]; *Noack v Symenow*, 132 AD2d 965 [1987]). Accordingly, we find that the Supreme Court properly dismissed the plaintiff's medical malpractice claims against DRA arising out of the May 1992 to July 1994 MRI scans as time-barred.

The Supreme Court properly dismissed the plaintiff's medical malpractice claim against DRA arising out of the alleged misreading of the August 1995 MRI for failure to establish that any alleged negligence was a substantial cause of the plaintiff's injuries. Although one of the plaintiff's experts, Dr. Sondra Pfeffer, a radiologist, testified that DRA negligently misread the August 1995 MRI by failing to accurately measure the tumor and reporting that the tumor showed no significant change compared to prior MRIs, the expert's testimony also set forth that DRA misread the previous MRIs from May 1992, December 1992, July 1993, and June 1994 by inaccurately measuring the tumor, providing no measurements in some of those reports, and reporting "no significant change" in the tumor's size, shape, and appearance in each of those reports, all of which she testified separately and collectively were substantial causes of the plaintiff's injuries. More specifically, that same expert testified that the June 1994 MRI showed that the tumor was compressing on the brain stem, a fact which one of the plaintiff's treating physicians, Dr. Alain de Lotbiniere, testified should have prompted the tumor's removal at that time.

Another of the plaintiff's experts, Dr. Joseph Waltz, a neurosurgeon, opined that the substantial causes of the plaintiff's injuries were Dr. Goodman's (1) decision to observe the tumor in 1992, rather than remove it, (2) failure to subsequently remove the tumor after later MRIs showed the tumor's growth, and (3) failure to remove the tumor in November 1995 when the plaintiff's facial symptoms worsened. Moreover, the plaintiff testified that he experienced worsening facial symptoms in late 1993 or early 1994, and told Dr. Goodman of that fact between December 1993 and February 1994, but that Dr. Goodman replied that the tumor showed "[n]o change." As such, the plaintiff's own testimony corroborates the testimony of his experts that substantial causes of his injuries were present prior to August 1995. Under the circumstances, the trial court properly dismissed the medical malpractice claims against DRA arising out of DRA's alleged misreading of the August 1995 MRI.

As to the medical malpractice claims against Dr. Goodman, the Supreme Court erred in dismissing those claims arising out of (1) the alleged misreading of the MRIs between 1992 and 1995, and (2) the failure to remove the tumor between 1994 and 1995.

To establish a prima facie case of medical malpractice, a plaintiff must set forth (1) the standard of care in the locality where the treatment occurred, (2) that the defendant breached that standard of care, and (3) that the breach was the proximate cause of his or her injuries (*see Meiselman v Crown Hgts. Hosp.*, 285 NY 389 [1941]). Further, where as here, the subject matter (acoustic neuromas) and treatment thereof are "not within the ordinary experience and knowledge of laypersons" (*Estate of Ward v Hoffman*, 139 AD2d 691, 693 [1988]), the plaintiff must establish a prima facie case of medical malpractice through expert medical opinion (*see McDermott v Manhattan Eye, Ear & Throat Hosp.*, 15 NY2d 20 [1964]).

In dismissing the plaintiff's medical malpractice claim against Dr. Goodman for allegedly misreading the series of MRIs between 1992 and 1995 by failing to detect the tumor's growth during that period, the trial court ignored that portion of Dr. Waltz's expert testimony in which he specifically explained that Dr. Goodman's misreading of the MRIs departed from good and accepted medical practice because Dr. Goodman had failed to adhere to the standards Dr. Goodman himself had set forth in June 1992: observation of the tumor would continue unless and until the tumor grew or the plaintiff developed facial symptoms. Further, Dr. de Lotbiniere's testimony indicated that observa-

tion of an acoustic neuroma was appropriate only until the tumor showed significant growth and/or the patient developed facial palsy or other symptoms.

Moreover, as Dr. Pfeffer testified, the MRIs between 1992 and 1995 showed the tumor grew 8-fold in volume. In addition, Dr. de Lotbiniere explained that an acoustic neuroma rarely causes facial symptoms at 2 cm. in size, sometimes causes facial symptoms at 2.5 cm. in size, and certainly causes facial symptoms at 3 cm. in size. According to the plaintiff, he first exhibited facial symptoms in late 1993 or early 1994 and reported the symptoms to Dr. Goodman, who nevertheless responded that the tumor had shown no change. Dr. Goodman recalled that in January 1994 he knew the plaintiff was exhibiting facial weakness, but recommended no treatment and instead referred the plaintiff for another MRI. As such, although Dr. de Lotbiniere testified that surgery may not be required for tumors less than 2 cm. in size, the MRIs and the plaintiff's facial symptoms indicated that the tumor was at least 2.5 cm. by late 1993 or early 1994.

Accordingly, the plaintiff's proof at trial demonstrated that by failing to determine that the tumor had grown, even when the plaintiff developed facial symptoms in late 1993 or early 1994, Dr. Goodman arguably deviated from accepted medical procedures (see Nestorowich v Ricotta, 97 NY2d 393 [2002]; Bernard v Block, 176 AD2d 843 [1991]).

As to the plaintiff's medical malpractice claim against Dr. Goodman for failing to remove the tumor between 1994 and 1995, Dr. Goodman conceded that he now believed that the MRIs showed that the tumor had grown between 1994 and 1995. Dr. Pfeffer's testimony measured the tumor's size as 2.4 cm. by 2.5 cm. by 2.4 cm. in June 1994 and 2.6 cm. by 2.8 cm. by 2.7 cm. in August 1995. Further, according to both the plaintiff and Dr. Goodman, the plaintiff had some facial weakness in late 1993 or early 1994, which Dr. Goodman did not treat. Additionally, Dr. de Lotbiniere testified that (1) patients may exhibit facial symptoms when tumors reach 2.5 cm. in size and (2) the tumor's apparent rapid growth made the plaintiff a candidate for the tumor's surgical removal. Under the circumstances, the plaintiff established a prima facie case that Dr. Goodman deviated from the standard of care for neurosurgeons by choosing to continue to observe the tumor between 1994 and 1995, rather than recommending its removal.

The plaintiff's remaining contentions are either unpreserved for appellate review or without merit. Adams, J.P., S. Miller, Ritter and Lifson, JJ., concur.