OPINION OF THE COURT
Simons, J.
Plaintiff instituted this action in 1985 seeking to recover damages for personal injuries, sustained in January 1984, which allegedly were caused by the presence of an intrauterine birth control device (IUD). The action is against Ortho Pharmaceutical Corporation, the manufacturer of the IUD, and defendant Crawford, the gynecologist who inserted it in 1969. Defendant gynecologist moved for partial summary judgment contending that claims of malpractice occurring more than two years and six months prior to January 1984 were time barred. The courts below denied the motion, holding that the continuous treatment exception applied and presented a question of fact for the jury. The appeal is before us by leave of the Appellate Division. We now reverse.
Plaintiff’s claim of continuous treatment rests upon her allegation that when defendant inserted the IUD, he advised her that it "could remain in place indefinitely, but that [she] should return to [him] periodically for routine gynecologic examinations.” Plaintiff followed that advice and returned to defendant periodically. The examinations were unremarkable until March 1981 when a vulva-vaginal infection, apparently unrelated to the IUD, was discovered and successfully treated. Plaintiff’s next contact with defendant was on January 30, 1984 when she telephoned him to complain of abdominal pain and fever. Defendant examined her the next day and discovered that she was suffering from pelvic inflammatory disease (PID) which required a hysterectomy.
Plaintiff alleges that the pelvic inflammatory disease was caused by the IUD and she asserts that defendant was negligent in providing follow-up care following insertion of the IUD, in performing periodic examinations, in permitting the IUD to remain in place for an extensive period of time, in failing to timely remove the IUD and in failing to timely *519 diagnose and treat the PID. Defendant claims that the PID was separate and discrete from the initial treatment and that claims predicated on conduct occurring more than two years and six months prior to 1984 were barred.
An action for medical malpractice must be commenced within two years and six months of the date of accrual (CPLR 214-a). A claim accrues on the date the alleged malpractice takes place (Nykorchuck v Henriques, 78 NY2d 255, 258; Matter of Daniel J. v New York City Health & Hosps. Corp., 77 NY2d 630, 634-635). The statute is tolled until after a plaintiffs last treatment, however, " 'when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint’ ” (McDermott v Torre, 56 NY2d 399, 405, quoting from Borgia v City of New York, 12 NY2d 151, 155).
Defendant established that more than two years and six months had elapsed between January 1984 and plaintiff’s last previous visit, in March 1981. That interval between visits is not per se dispositive of defendant’s claim that the statute has run, but because of it the burden shifted to plaintiff to establish that her examinations constituted "continuous treatment” and that the tolling exception was applicable (Rizk v Cohen, 73 NY2d 98; and see, Werner v Kwee, 148 AD2d 701, 702; Valenti v Trunfio, 118 AD2d 480, 483; Barrella v Richmond Mem. Hosp., 88 AD2d 379, 380).
We have held that "continuous treatment” involves more than a physician-patient relationship (McDermott v Torre, supra, at 405; Borgia v City of New York, supra, at 157). There must be ongoing treatment of a medical condition. The doctrine rests on the premise that the trust and confidence that marks such relationships puts the patient at a disadvantage in questioning the doctor’s skill because to sue while undergoing treatment necessarily interrupts the course of treatment. "It would be absurd”, we stated, "to require a wronged patient to interrupt corrective efforts by serving a summons on the physician” under those circumstances (Borgia v City of New York, supra, at 156 [emphasis added]). A patient is not entitled to the benefit of the toll in the absence of continuing efforts by a doctor to treat a particular condition because the policy reasons underlying the continuous treatment doctrine do not justify the patient’s delay in bringing suit in such circumstances (Nykorchuck v Henriques, supra, at 259; see also, Grellet v City of New York, 118 AD2d 141, 147-148). Thus, we *520 have emphasized that continuous treatment "does not contemplate circumstances where a patient initiates return visits merely to have * * * her condition checked” (McDermott v Torre, supra, at 405). Routine examinations of a patient who appears to be in good health or diagnostic examinations, even when conducted repeatedly over a period of time, are not "a course of treatment” (Charalambakis v City of New York, 46 NY2d 785, 787; see also, Nykorchuck v Henriques, supra; Davis v City of New York, 38 NY2d 257).
The present action does not come within the exception. The single procedure defendant performed for plaintiff was the insertion of the IUD: her subsequent visits to him were for routine gynecological examinations, not therapy to correct a medical condition. Consequently, these visits may not serve as a basis for applying the continuous treatment exception because plaintiff could have interrupted the services and switched physicians at any time without jeopardizing her health.
The point is illustrated by the dissent’s hypothetical in support of its position that a patient visiting a physician for checkups following surgery is undergoing continuous treatment (see, dissenting opn, at 521). Manifestly, there is continuing treatment involved in overseeing a patient’s recovery following surgery. Assuming visits for that purpose could legitimately last more than the statutory period, the patient could not reasonably be expected to terminate aftercare and sue for malpractice while the physician was still checking the wounds and monitoring the healing process. Here, by contrast, the dissenters would extend the exception to cover a relationship over 15 years, and conceivably for the remainder of the patient’s life, when there was no treatment to continue and the plaintiff would jeopardize nothing by instituting suit at any time if she believed defendant guilty of malpractice.
Accordingly, the order of the Appellate Division should be reversed, with costs, the motion for partial summary judgment granted, and the certified question answered in the negative.