[612 NYS2d 119]

ANDREW BRANIGAN, an Infant, by His Mother and Natural Guardian, JEAN BRANIGAN, et al., Respondents, v CHARLES DEBROVNER, Appellant, et al., Defendant.

First Department, May 17, 1994

## APPEARANCES OF COUNSEL

*Mark S. Weinstein* of counsel *(Joan A. Berk* with him on the brief; *Bartlett, McDonough & Berk,* attorneys), for appellant.

*William Dinkes* of counsel *(George Schwarz* with him on the brief; *Dinkes & Morelli,* attorneys), for respondents.

## OPINION OF THE COURT

SULLIVAN, J. P.

On May 14, 1989, plaintiff Jean Branigan, approximately five weeks pregnant, appeared at the emergency room of Central General Hospital complaining of flu-like symptoms and a rash covering most of her body. Routine blood tests, including a rubella titer, were taken. Eventually that same day, she spoke with defendant, Dr. DeBrovner, her gynecologist since 1987, and advised him of her hospital visit, her symptoms and the possibility of rubella. Plaintiff was subsequently told, that same day or the next, that the test for rubella was negative. Dr. DeBrovner thereafter dismissed rubella as the cause of plaintiff's flu symptoms and rash, which, as he advised her, were probably an allergic reaction to something she had eaten. According to plaintiff, Dr. DeBrovner saw no need to see her at his office at that time. Nor did he ever obtain the actual results of the rubella test taken in May 1989. Plaintiff continued to see Dr. DeBrovner for her prenatal care.

On June 29, 1989, during a routine prenatal visit, Dr. DeBrovner drew blood from plaintiff for the purpose of having various tests performed, one of which was for immunity to rubella. The rubella test reading, which he reviewed no later

than July 12, 1989, was valued at 3.160, a normal reading showing immunity to the disease. At plaintiff's next prenatal visit, on August 7, 1989, Dr. DeBrovner advised her that she was immune to rubella and had not contracted it during her pregnancy. As is made clear in an affidavit by plaintiff's expert, the rubella titer taken in July showing immunity to the disease was an insufficient basis on which to determine that plaintiff had not contracted rubella during the pregnancy. Plaintiff's final prenatal visit with Dr. DeBrovner was on September 11, 1989. Thereafter her prenatal care was managed by an associate of Dr. DeBrovner who specialized in obstetrics. On January 19, 1990, plaintiff gave birth to a son, Andrew, also a plaintiff herein, who, it was subsequently determined, was born suffering from congenital rubella syndrome.

This action, alleging malpractice in failing to diagnose plaintiff's rubella, purportedly contracted by her in May of 1989 while she was in the early stage of her pregnancy, was commenced against Dr. DeBrovner on January 30, 1992. After the completion of discovery, Dr. DeBrovner moved for, *inter alia,* summary judgment dismissing plaintiff's claim on the ground it is barred by the two-and-one-half-year Statute of Limitations governing medical malpractice actions. (CPLR 214-a.) In so moving, Dr. DeBrovner argued that any malpractice on his part occurred on May 15, 1989 or, at the latest, in mid-July of 1989, more than two and one-half years before the commencement of the action against him. Dr. DeBrovner also argued that the continuous treatment doctrine was unavailing to toll the statute since the course of treatment for the particular condition for which plaintiff was being treated, i.e., rubella, was complete when the doctor made his diagnosis that plaintiff was not suffering from the condition. The June 29, 1989 test, according to Dr. DeBrovner, was not a continuation of an earlier treatment, as the original diagnosis was complete and neither plaintiff nor the doctor contemplated the need for further treatment with respect to it.

In opposition, plaintiff argued, *inter alia,* that the continuous treatment doctrine applied, rendering the action timely. Avoiding the question of whether the continuous treatment doctrine applies to the facts presented, the IAS Court found that the cause of action did not accrue until August 7, 1989, thus bringing the action, commenced on January 30, 1992, within the two-and-one-half-year period. We affirm, but not for the reason relied upon by the IAS Court.

The IAS Court erred in ruling that plaintiff's cause of action did not accrue until August 7, 1989. According to the court's reasoning, on that date Dr. DeBrovner failed to verify the results of the earlier May 1989 test and, in light of the fact that, by mid-July 1989, plaintiff had developed an immunity to rubella—a clear indication that she had at some earlier time contracted it—was therefore allegedly negligent. A medical malpractice claim accrues on the date of the original act, omission or complained-of failure. *(McDermott v Torre,* 56 NY2d 399, 407; *Matter of Daniel J. v New York City Health & Hosps. Corp.,* 77 NY2d 630, 634.) Taking plaintiff's claim at face value, the act of malpractice complained of occurred on May 15, 1989, when Dr. DeBrovner negligently attributed plaintiff's symptoms to food poisoning, rather than to rubella, and determined that she required no further treatment of the symptoms. Any cause of action plaintiff has for malpractice accrued on that date.

The argument that the malpractice occurred on August 7, 1989, which is within the two-and-one-half-year period, because, on that date, as plaintiff puts it, Dr. DeBrovner's "memory should have been jogged" as to her earlier concern about the possibility of having contracted rubella, makes the obvious point—that Dr. DeBrovner was negligent because he should have reassessed his initial diagnosis. The actionable fault is not a memory lapse on August 7, 1989 but an earlier, May 15, 1989 or mid-July, at the latest, failure to diagnose. Even under that argument, however, the date of accrual would remain the same, i.e., the date of the original act or omission. *(McDermott v Torre,* 56 NY2d, *supra,* at 407.)

Even assuming, arguendo, that, as plaintiff contends, the critical omission was Dr. DeBrovner's negligence in not obtaining the May 1989 Central General Hospital test results for comparison when he received the normal 3.160 rubella titer reading, that negligence, which occurred in mid-July, at the latest, would still have taken place at a time outside the applicable two-and-one-half-year Statute of Limitations.

Thus, since the misdiagnosis, whether May 15, 1989 or mid-July 1989 be the critical date, occurred beyond the statutory two and one-half years, this action is untimely unless the continuous treatment doctrine applies. While this doctrine, which is reflective of a public policy premised on the concept that "the trust and confidence that marks [physician-patient] relationships puts the patient at a disadvantage in questioning

the doctor's skill because to sue while undergoing treatment necessarily interrupts the course of treatment" *(Massie v Crawford,* 78 NY2d 516, 519, *rearg denied* 79 NY2d 978), does not change the accrual date of a cause of action, it does serve to toll the running of the applicable Statute of Limitations. *(McDermott v Torre,* 56 NY2d, *supra,* at 407.) As has been held, to require a patient undergoing treatment to take legal action against the medical provider is asking too much. *(See, Borgia v City of New York,* 12 NY2d 151, 156.) The doctrine, obviously, "applies only when the course of treatment which includes the wrongful act or omission has run continuously and is related to the same original condition [citations omitted]." *(Jorge v New York City Health & Hosps. Corp.,* 79 NY2d 905, 906.)

Here, it is undisputed that Dr. DeBrovner was plaintiff's gynecologist and had been providing her with prenatal care during her early pregnancy. While Dr. DeBrovner would limit the condition being treated to rubella and the course of treatment to his May 15, 1989 negative diagnosis, it is clear that plaintiff was under his care for all her early pregnancy prenatal medical needs, and not for a series of unrelated and discrete tests and procedures, each giving rise to a separate and unrelated course of treatment. Plaintiff engaged Dr. DeBrovner's services for her pregnancy and not her complaint of rubella. As her gynecologist/obstetrician, he was required to treat the complications of her pregnancy or, if the complication was beyond his area of specialty, to refer her to another competent medical care provider. Continuous treatment for prenatal care should extend to the time of birth and encompass the myriad, diverse procedures and tests appropriate to carrying a child to term and the delivery.

*Miller v Rivard* (180 AD2d 331) is a case in point. A mother sued for a "wrongful conception" as a result of her husband's failed vasectomy. The Court held that "the course of related, continuous treatment in the case of a vasectomy performed for the purpose of birth control does not end until completion of the postoperative procedures of fertility testing and notification to the patient that the test results show that the vasectomy was a success." *(Supra,* at 338.) By parity of reasoning, the treatment with respect to prenatal care ordinarily should last until the time of birth. *Jorge v New York City Health & Hosps. Corp.* (79 NY2d 905, *supra),* upon which Dr. DeBrovner relies, is not to the contrary. There, the plaintiff mother alleged that she would have terminated her pregnancy had

she known her husband carried the trait for sickle cell anemia, as to which the defendant allegedly misread the husband's genetic test results. In rejecting the claim of a continuous treatment toll, the Court found neither continuous treatment nor treatment related to the same original condition. It held that "the alleged act of malpractice—the misreading of the father's genetic test results—was simply not committed in relation to the ongoing obstetric care that plaintiff received [citation omitted]." *(Supra,* at 906.) *Jorge* is plainly distinguishable in that here the acts of malpractice were committed against the patient, plaintiff, and were part of a continuing course of the treatment, i.e., prenatal care, being provided to her.

Throughout her pregnancy, plaintiff continued to place her trust and confidence in the treatment being afforded by Dr. DeBrovner. Although she questioned him repeatedly about her rubella, she never sought a second opinion. She adhered to her schedule of appointments and relied upon Dr. DeBrovner's medical advice. It is precisely this type of trust and confidence which underlies the continuous treatment doctrine. *(See, e.g., Richardson v Orentreich,* 64 NY2d 896, 899.) The notion, implicit in Dr. DeBrovner's argument, that an obstetric patient should, during the course of her pregnancy, consult one physician after another, each one attending to a discrete aspect of prenatal care, ignores reality. The public policy underlying the continuous treatment doctrine would be ill served if an ongoing gynecological/obstetric doctor-patient relationship coextensive with pregnancy is not recognized as one, undivided course of treatment.

Since we conclude that the continuous treatment doctrine applies to this case and served to toll the Statute of Limitations at least until plaintiff's final prenatal visit to Dr. DeBrovner on September 11, 1989, this action, commenced on January 30, 1992, was timely.

Accordingly, the orders of the Supreme Court, New York County (Ira Gammerman, J.), entered May 18 and May 20, 1993, which, *inter alia,* denied defendant DeBrovner's motion to dismiss the complaint as time barred, should be affirmed, without costs or disbursements.

WALLACH, ROSS, ASCH and TOM, JJ., concur.

Orders, Supreme Court, New York County, entered on May 18 and May 20, 1993, affirmed, without costs and without disbursements.