OPINION OF THE COURT
Philip G. Minardo, J.
*593 Motion by defendant Kenneth Wooh, M.D., pursuant to CPLR 3211 and 3212, seeking an order dismissing the complaint as against bim on the ground that any allegations of medical malpractice are barred by the applicable statute of limitations is granted, and the complaint as to this defendant is hereby severed and dismissed.
This is an action sounding in medical malpractice wherein it is alleged that Dr. Wooh failed to timely diagnose and treat an acoustic neuroma, i.e., a benign tumor on the surface of the brain of plaintiff Joseph Gottfried.
It appears without contradiction that plaintiff Joseph Gottfried first saw Dr. Wooh, an ear, nose and throat specialist, on May 23, 1994 complaining of imbalance and hearing loss. At that time, Dr. Wooh conducted an audiogram which revealed a right sensorineural hearing loss and ordered plaintiff to undergo an MRI. According to the radiology report of May 26, 1994, the MRI revealed bilateral nasal polyps and sinusitis, but was negative for the presence of a brain tumor (see plaintiffs exhibit D).* At his deposition, Dr. Wooh testified that he had considered the possibility of an acoustic neuroma and had ordered the MRI to rule out this diagnosis. In view of the negative MRI report, Dr. Wooh opined that plaintiffs hearing loss was unexplained and referred him to Dr. Frank Loh, a neurologist, who plaintiff saw in June of 1994 with complaints of imbalance. On June 21, 1994, Dr. Wooh removed plaintiffs nasal polyps and continued to treat him postsurgically until September 28, 1994. According to Dr. Wooh, it was his impression that the imbalance was not ENT (ear, nose and throat) related. Plaintiff was discharged in September of 1994 with an instruction to return for an evaluation of the nasal condition if and when the polyps recurred. While plaintiff did, in fact, testify that the nature of any follow up with Dr. Wooh was for treatment of his polyps (see defendants exhibit L), he now states in his opposing affidavit dated May 24, 2004 (see plaintiffs exhibit A), that it was his understanding that Dr. Wooh was his “hearing doctor” and that he was to return to Dr. Wooh to monitor his hearing loss as the deterioration progressed. However, this claim is not supported by any other admissible evidence or Dr. Wooh’s office records.
*594 On January 27, 1997 (28 months later), plaintiff returned to Dr. Wooh complaining of a further hearing loss and ringing in his ear. According to Dr. Wooh, plaintiffs 1997 audiogram was unchanged as compared to his 1994 audiogram, and since plaintiff was under the care of a neurologist for the imbalance, there was no plan or instruction or a follow-up visit scheduled (see defendant’s exhibit K at 95-110).
On December 17, 1999 (another 35 months later), plaintiff returned to Dr. Wooh after having spinal surgery on November 3, 1999 at Staten Island University Hospital. Following the surgery, plaintiff complained of dizziness and headaches, at which time he was ordered to undergo a CT scan which revealed the presence of a right acoustic neuroma. This diagnosis was confirmed by an MRI which was performed on December 17, 1999, the same day as plaintiffs visit to Dr. Wooh. Plaintiff subsequently underwent a suboccipital craniectomy in order to remove the tumor on January 6, 2000 (see defendant’s exhibit T).
In support of his motion to dismiss the complaint, Dr. Wooh asserts that any claims of medical malpractice are barred by the applicable 2V2-year statute of limitations.
In opposition to the motion, plaintiff asserts that Dr. Wooh indicated to plaintiff that his unilateral hearing loss was likely due to deterioration caused by “old age” or “presbycusis,” and that his hearing would need to be reevaluated over time as it deteriorated. As a result, plaintiff contends that he considered Dr. Wooh as continuing to treat him for his hearing loss, and that he was never discharged from Dr. Wooh’s care as it related to his hearing condition. Accordingly, plaintiff maintains that the statute of limitations was tolled, and that any and all allegations of medical malpractice stemming from plaintiffs initial visit to Dr. Wooh on May 23, 1994 are still viable. Plaintiff further contends that the December 17, 1999 visit to Dr. Wooh clearly constituted a continuing course of treatment for plaintiffs declining hearing condition, now recognized to have been caused by an acoustic neuroma rather than presbycusis, and that the tolling of the statute of limitations is warranted because his complaints of hearing loss and imbalance remained constant over the years.
The toll for continuous treatment is codified in CPLR 214-a. That statute provides, as relevant, that a medical malpractice action must be commenced within 272 years from the date “of the act, omission or failure complained of or last treatment where *595 there is continuous treatment for the same illness, injury or condition which gave rise to said act, omission or failure” (CPLR 214-a [emphasis supplied]). Under the continuous treatment doctrine, “when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint, the ‘accrual’ comes only at the end of the treatment” (Borgia v City of New York, 12 NY2d 151, 155 [1962] [emphasis supplied]; CPLR 214-a).
Accordingly, a continuing physician-patient relationship, or routine, periodic health examinations are insufficient, standing alone, to satisfy the doctrine’s requirement of continuous treatment of the condition upon which the allegations of medical malpractice are predicated (see Massie v Crawford, 78 NY2d 516, 519-520 [1991]). “A patient is not entitled to the benefit of the toll in the absence of continuing efforts by a doctor to treat a particular condition” (id. at 519). Notably, treatment in this context does not necessarily terminate upon a patient’s last visit to the doctor if further care or monitoring of the original condition is “explicitly anticipated by both physician and patient as manifested in the form of a regularly scheduled appointment for the near future, agreed upon during that last visit, in conformance with the periodic appointments which characterized the treatment in the immediate past” (Richardson v Orentreich, 64 NY2d 896, 898-899 [1985]).
Additionally, it is well established that where, as here, the gaps between treatments “exceed . . . the applicable Statute of Limitations period, the continuity of treatment [is] broken” and the continuous treatment doctrine does not apply (Matter of Bulger v Nassau County Med. Ctr., 266 AD2d 212 [2d Dept 1999] [citations omitted]). Moreover, although the Court of Appeals has held in Curdo v Ippolito (63 NY2d 967 [1984]) that the foregoing exclusion need not be applied in every instance in which a period longer than the applicable statute of limitations passes between visits, this is not a circumstance wherein the required continuity has been established through a “timely return visit instigated by the patient to complain about and seek treatment for a matter relating to the initial treatment” (Curdo v Ippolito, 63 NY2d at 969, citing McDermott v Torre, 56 NY2d 399, 406 [1982]). Applying all of the aforementioned principles, this court has concluded that plaintiff may not benefit from the toll afforded by the continuous treatment doctrine.
Here, despite plaintiffs affidavit stating that he considered Dr. Wooh to be his “hearing doctor” and that he did not consult *596 any other ENT specialist about his hearing condition, he had previously testified at his examination before trial (defendant’s exhibit L at 98-99) that it was not necessary for him to go back to Dr. Wooh because the polyps had been corrected and any follow-up visit was to be predicated upon a recurrence. On these facts, plaintiffs conclusory, self-serving affidavit is legally insufficient to raise a triable issue regarding Dr. Wooh’s purported instruction that plaintiff return for a reevaluation of his hearing (cf. Bongiorno v Penske Auto. Ctr., 289 AD2d 520 [2d Dept 2001]).
This conclusion is reinforced by plaintiffs further testimony (examination before trial at 120), wherein he stated that bis return to Dr. Wooh on January 27, 1997 had not been scheduled at his previous September 1994 visit, and that he returned because his hearing was worsening and a new symptom had developed, i.e., a ringing in the ear. Finally, plaintiff subsequently testified (id. at 184) that when he returned to Dr. Wooh on December 17, 1999 just prior to the acoustic neuroma surgery, he was sent by Dr. Ho to have Dr. Wooh determine his presurgical hearing level.
From all of the above, it is clear that plaintiffs return visits to Dr. Wooh on September 28, 1994 and December 17, 1999 were not only “untimely” under Curdo, but also “explicitly [un]anticipated by both physician and patient” (Richardson v Orentreich, 64 NY2d at 898). Accordingly, these visits do not rise to the level of “continuing treatment” for purposes of tolling the statute of limitations.
Finally, the court notes that the affidavit of Mr. Lipscomb, a certified audiologist, fails to demonstrate his qualifications to render a medical opinion as to whether or not defendant deviated from the relevant standard of care, and has been disregarded (see Mills v Moriarty, 302 AD2d 436 [2d Dept 2003], lv denied 100 NY2d 502 [2003]). Nevertheless, the result would be the same even were this court to consider Mr. Lipscomb’s affidavit. The within motion is not premised upon defendant’s purported compliance with the applicable standard of care, but rather the statute of limitations and whether or not the continuous treatment doctrine renders defendant’s purported reliance thereon unavailing. Since the court has determined that a patient’s initiation of a return visit to his or her doctor to have a condition checked every 21/z to 3V2 years does not implicate the policy considerations underlying the continuous treatment doctrine (see e.g. Nykorchuck v Henriques, 78 NY2d 255 [1991]; *597 McDermott v Torre, 56 NY2d 399 [1982], supra), no further issue need be considered.
Inasmuch as plaintiffs summons and complaint were filed on or about September 27, 2002, his only visit to Dr. Wooh which would fall within the applicable statute of limitations is the visit of April 21, 2000, and since none of the allegations of medical malpractice relate to the April 21, 2000 visit, no issues of fact remain with respect to this physician.
The same, of course, is applicable to any derivative claims of plaintiff Katherine Gottfried.
Accordingly, it is hereby ordered that defendant Kenneth Woolf s motion for an order dismissing the complaint as against him is granted in its entirety; and it is further ordered that the complaint as against said defendant is severed and dismissed.

 While plaintiff claims that Dr. Wooh should have ordered the 1994 MRI with contrast, that argument is belied by plaintiffs acknowledgment that the tumor in question was detectable on films ordered by Dr. Wooh. However, Dr. Wooh appears to have relied on the negative MRI report issued by the radiologist, who is not a party to this action.