KENNETH H. PATTEN, Individually and as Testamentary Executor of PATRICIA PATTEN, Deceased, Appellant, v HAMBURG OB/GYN GROUP, P.C., et al., Respondents. [856 NYS2d 748]—

Appeal from an order of the Supreme Court, Erie County (Donna M. Siwek, J.), entered January 25, 2007 in a medical malpractice action. The order, insofar as appealed from, granted in part defendants' motion for summary judgment dismissing the complaint.

It is hereby ordered that the order so appealed from is affirmed without costs.

Memorandum: Plaintiff and his wife (decedent) initially commenced this medical malpractice action alleging that defendants were negligent in prescribing estrogen cream to decedent for symptoms of menopause, "although they were aware and should have known" that she had previously been diagnosed with breast cancer. Decedent subsequently died, and plaintiff is now suing defendants individually and as executor of decedent's estate.

Supreme Court properly granted that part of defendants' motion for summary judgment dismissing the complaint insofar as it concerns medical services rendered prior to February 1, 2001, i.e., more than two years and six months before the commencement of the action (see CPLR 214-a). Decedent came under the treatment of defendant Philip Lauria, M.D. in March 1995, at which time she complained of vaginal dryness and irritation,

and Dr. Lauria prescribed an estrogen cream in June 1995 to relieve decedent's menopausal symptoms. Dr. Lauria continued to see decedent for annual routine examinations through September 1999, after which he no longer treated decedent because he was on medical disability leave. Decedent subsequently was treated by Donald C. Gregory, M.D., another employee physician of defendant Hamburg OB/GYN Group, P.C. (Hamburg). From 1995 until May 2001, Dr. Lauria, Dr. Gregory, and another employee physician of Hamburg routinely prescribed the estrogen cream for decedent's complaints of vaginal dryness. Decedent was diagnosed with metastatic breast cancer in August 2001, and this action was commenced on August 1, 2003.

In support of their motion, defendants established that the statute of limitations began to run, at the latest, in June 1995, when Dr. Lauria first prescribed the estrogen cream. Inasmuch as the action was commenced on August 1, 2003, the action is time-barred with respect to any medical services provided prior to February 1, 2001 (*see* CPLR 214-a). In opposition, plaintiff failed to raise a triable issue of fact whether the statute of limitations was tolled by the continuous treatment doctrine until May 25, 2001, the date on which Dr. Gregory last prescribed the estrogen cream for decedent (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). "[E]ssential to the application of the [continuous treatment] doctrine is that there has been a course of treatment established with respect to the condition that gives rise to the lawsuit" (*Nykorchuck v Henriques*, 78 NY2d 255, 258-259 [1991]). Because Dr. Lauria and Dr. Gregory did not treat decedent's breast cancer and their treatment of decedent consisted of routine, annual gynecological care, the continuous treatment doctrine does not apply (*see Trimper v Jones*, 37 AD3d 1154 [2007]; *Sofia v Jimenez-Rueda*, 35 AD3d 1247, 1249 [2006]; *Couzens v Augustine*, 305 AD2d 1012 [2003]). While arguably there may be a relationship between the recurrence of decedent's breast cancer and decedent's use of the estrogen cream (*cf. Nykorchuck*, 78 NY2d at 259), application of the continuous treatment doctrine nevertheless is unwarranted "because [decedent] could have interrupted [defendants'] services [for treatment of her menopausal symptoms] and switched physicians at any time without jeopardizing her health" (*Massie v Crawford*, 78 NY2d 516, 520 [1991], *rearg denied* 79 NY2d 978 [1992]).

We reject plaintiff's further contention that, because Dr. Lauria and Hamburg are "united in interest," CPLR 203 and the relation back doctrine operate to toll the statute of limita-

tions with respect to Dr. Lauria. We note at the outset that CPLR 203 "is not a tolling or extension provision" (*Robinson v Village of Lancaster*, 187 AD2d 932, 932 [1992]), and thus CPLR 203 does not serve to toll the statute of limitations with respect to Dr. Lauria. Second, plaintiff does not allege that Hamburg was served prior to March 27, 2002, two years and six months from the last day on which Dr. Lauria treated decedent. Thus, "application of [either] the unity of interest rule [or the relation back doctrine] is totally unavailing to save [the] claim against [Dr. Lauria] insofar as it is based upon his own active negligence" (*Paciello v Patel*, 83 AD2d 73, 76 [1981]). To the extent that the claim is predicated on the contention that Dr. Lauria is vicariously liable for the acts of Dr. Gregory, Hamburg's employee, we note that plaintiff need not rely on CPLR 203 and the unity of interest rule inasmuch as Hamburg was timely served within two years and six months from the date on which Dr. Gregory last prescribed the estrogen cream for decedent. In any event, that contention also is without merit because "[t]he fact that a 'physician is a shareholder, officer or employee of a professional service corporation does not make him vicariously liable for the malpractice of another doctor who is an officer, director and employee of the corporation' " (*Bradt v Hamel*, 144 AD2d 921, 922 [1988], quoting *Hill v St. Clare's Hosp.*, 67 NY2d 72, 79 [1986]).

In light of our decision, we need not reach plaintiff's remaining contention.

All concur except Gorski, J.P., and Peradotto, J., who dissent in part and vote to modify in accordance with the following memorandum.

Gorski, J.P., and Peradotto, J. (dissenting in part). We respectfully dissent in part and would modify the order because, in our view, plaintiff established that Hamburg OB/GYN Group, P.C. (defendant) provided continuous treatment to Patricia Patten, his wife (decedent), for severe menopausal symptoms, which treatment gave rise to this malpractice action (*see generally* CPLR 214-a; *Nykorchuck v Henriques*, 78 NY2d 255, 258-259 [1991]). Plaintiff and his wife both initially commenced this action but plaintiff's wife subsequently died, and plaintiff is now suing defendants individually and as executor of decedent's estate.

In 1989 decedent was diagnosed with adenocarcinoma of the right breast and underwent a mastectomy of the right breast. In March 1995, decedent began a course of gynecological treatment with defendants for a menopausal/gynecological problem (extreme vaginal dryness), and that course of treatment

continued uninterrupted with defendant through May 25, 2001. During that period of uninterrupted treatment with defendant, which was aware of decedent's prior breast cancer, the treatment of decedent's vaginal condition consisted of office visits, telephone conferences and 47 separate prescriptions for Premarin, which is estrogen in cream form. In August 2001, decedent was diagnosed with a recurrence of breast cancer, at which time decedent's treatment with defendant ceased. This action was commenced on August 1, 2003.

Inasmuch as this action was commenced within two years and six months of the cessation of defendant's continuous treatment of decedent's gynecological condition, plaintiff established that defendant continuously treated decedent for a condition that gave rise to this action (*see* CPLR 214-a; Nykorchuck, 78 NY2d at 258-259; *Bonanza v Raj*, 280 AD2d 948 [2001]; *Green v Varnum*, 273 AD2d 906 [2000]). Plaintiff alleges that, from 1995 to May 2001, defendant improperly treated decedent's severe menopausal symptoms of vaginal dryness by, inter alia, prescribing a medication that, as reflected in the medical records, was contraindicated in light of decedent's history of breast cancer. The record establishes, and defendants concede, ongoing and continuous treatment by defendant of decedent's menopausal symptoms during that time period. Further, prescribing medication, in person or over the telephone, constitutes treatment (*see Stilloe v Contini*, 190 AD2d 419, 421 [1993]). Plaintiff established that defendant continuously treated decedent's specific gynecological condition with knowledge of the potential impact of the prescribed medication on decedent, including the possible recurrence of breast cancer. As the First Department wrote in *Sinclair v Cahan* (240 AD2d 152, 155 [1997]), because decedent "was in the midst of the prescribed hormone treatment at the point $2^1/_2$ years prior to her commencement of this action . . . [t]he continuous treatment doctrine would thus extend the Statute of Limitations . . . back to [the date] when hormone treatment was first considered for this patient." Here, because "the course of treatment which includes the wrongful acts or omissions [ran] continuously and [was] related to the same original condition" (*Nykorchuck*, 78 NY2d at 258 [internal quotation marks omitted]), i.e., vaginal dryness associated with menopause, the statute of limitations did "not begin to run until the end of the course of treatment" (*id.*). This action thus had to be commenced by November 25, 2003 and, because it was, we cannot agree with the majority that the court properly granted that part of defendants' motion for summary judgment dismissing the complaint against defendant with respect to medical services rendered prior to February 1, 2001. We therefore would

modify the order by denying that part of defendants' motion and reinstating the complaint in its entirety against defendant.

In our view, the fact that defendant was not treating decedent specifically for breast cancer is not relevant to the analysis of whether the continuous treatment doctrine applies because, here, "the continuous treatment [was] 'for the same . . . condition which gave rise to the . . . act, omission or failure' complained of" (*id.* at 259). Thus, the recurrence of breast cancer is an element of the injury and damages allegedly sustained by decedent and plaintiff because of the course of the treatment undertaken to treat decedent's vaginal condition.

We further reject the contention of the majority that defendant's "treatment of decedent consisted of routine, annual gynecological care, [and thus] the continuous treatment doctrine does not apply." Defendants concede that decedent's visits included treatment for vaginal dryness associated with menopause. Indeed, while the record reflects annual care visits, it also reflects emergency and urgent care visits as well as numerous consultations by telephone between decedent and defendant for the specific purpose of addressing decedent's severe menopausal symptoms of vaginal dryness.

In addition, we conclude that the majority mistakenly relies on *Massie v Crawford* (78 NY2d 516, 520 [1991], *rearg denied* 79 NY2d 978 [1992]) for the proposition that decedent could have interrupted defendant's treatment of her menopausal symptoms and changed physicians at any time without jeopardizing her health. The record establishes that not all of decedent's visits to defendant were routine visits and, thus, had decedent switched physicians between 1995 and 2001, she would have interrupted a course of treatment that defendant had undertaken to treat her symptoms (*cf. id.*). To require decedent to commence an action during ongoing treatment would undermine the purpose of the continuous treatment doctrine, which "is to 'maintain the physician-patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure' " (*Nykorchuck*, 78 NY2d at 258).

We agree with the majority, however, that the statute of limitations with respect to defendant Philip Lauria, M.D., who last treated decedent on September 27, 1999, expired prior to the commencement of this action and that the court properly granted that part of defendants' motion for summary judgment dismissing the complaint against him. Present—Gorski, J.P., Martoche, Lunn, Peradotto and Pine, JJ.