GARCIA, J.
**754 Summary judgment was properly denied, as there are triable issues of fact concerning whether the continuous treatment doctrine tolls the statute of limitations on plaintiff's claims.
Plaintiff was treated by defendant for chronic shoulder problems beginning in 1998. Defendant performed surgery on plaintiff in 1999 and five postoperative visits followed over the course of the next year. After a scheduled one-year post-surgery appointment, plaintiff did not see defendant until 19 months later, when she returned after experiencing increased pain in her shoulder. Defendant recommended injections and a second surgery, which was performed in January 2002. Plaintiff **755 returned to defendant for a postoperative visit in April 2002. In September 2003, she saw defendant after her shoulder injury was aggravated.
After this appointment, there was a gap in treatment of more than 30 months. Plaintiff testified that she "had gotten discouraged with [defendant]" but ultimately returned to him because defendant "was all [she] had." She returned in April 2006 because of continued pain, at which point defendant ordered X rays and referred plaintiff to his partner for a third surgery because defendant was no longer performing shoulder surgeries. She consulted defendant's partner but ultimately began seeing a new orthopedic surgeon in July 2006.
Plaintiff brought this action against defendant in September 2008, alleging that defendant negligently performed her original 1999 surgery and subsequently failed to diagnose the flawed surgery, leading to continued problems with her shoulder and a second surgery. Following discovery, defendant moved for partial summary judgment dismissing the suit to the extent it alleged malpractice based on conduct before March 2006. Supreme Court denied the motion, finding that plaintiff raised triable issues of fact concerning the possible tolling of the statute of limitations based on continuous treatment.
The Appellate Division affirmed, holding that plaintiff had raised "issues of fact whether plaintiff and defendant 'reasonably intended plaintiff's uninterrupted reliance upon defendant's observation, directions, concern, and responsibility for overseeing plaintiff's progress' " ( 140 A.D.3d 1717, 1718 [4th Dept. 2016] [brackets omitted], quoting Shumway v. DeLaus, 152 A.D.2d 951, 543 N.Y.S.2d 777 [4th Dept. 1989] ). One Justice dissented and would have found that the continuous treatment doctrine did not apply because the parties only intended treatment after September 2003 on an as-needed basis. The Appellate Division granted defendant's *894 application for leave to appeal to this Court.
We affirm. CPLR 214-a provides that a medical malpractice action must be commenced within 2½ years of the relevant act or the "last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the [challenged] act, omission or failure." The operative accrual date for the purposes of determining a claim's statute of limitations is at the end of treatment "when the course of treatment which includes the wrongful acts or omissions has run continuously **756 and is related to the same original condition or complaint" ( Borgia v. City of NY, 12 N.Y.2d 151, 155, 237 N.Y.S.2d 319, 187 N.E.2d 777 [1962] ). The continuous treatment doctrine "seeks to maintain the physician-patient relationship" in order for the patient to receive the "most efficacious medical care [;] ... [i]mplicit in the policy is the recognition that the doctor not only is in a position to identify and correct [the] malpractice, but is best placed to do so" ( McDermott v. Torre, 56 N.Y.2d 399, 408, 452 N.Y.S.2d 351, 437 N.E.2d 1108 [1982] ).
Defendant raises various arguments aimed at the gaps between plaintiff's visits and the "as needed" basis for scheduling some of those appointments. However, plaintiff raised issues of fact as to whether she and defendant intended a continuous course of treatment. Plaintiff saw defendant over the course of four years, underwent two surgeries at his hand, and saw no other doctor for her shoulder during this time. She returned to him after the gap of more than 30 months, discussed yet a third surgery with him, and accepted his referral to his partner only because defendant was no longer performing such surgeries. Plaintiff's testimony regarding feeling discouraged with defendant's treatment does not demonstrate as a matter of law that she never intended to return to his care; in fact, her testimony reveals that she considered defendant her only doctor during this time. Nor does the fact that defendant repeatedly told plaintiff she should return "as needed" foreclose a finding that the parties anticipated further treatment. Notably, plaintiff's injury was a chronic, long-term condition which both plaintiff and defendant understood to require continued care. Each of plaintiff's visits to defendant over the course of seven years were "for the same or related illnesses or injuries, continuing after the alleged acts of malpractice" ( Borgia, 12 N.Y.2d at 157, 237 N.Y.S.2d 319, 187 N.E.2d 777 ). As to the more that 30-month period between visits, we have previously held that a gap in treatment longer than the statute of limitations "is not per se dispositive of defendant's claim that the statute has run" ( Massie v. Crawford, 78 N.Y.2d 516, 519, 577 N.Y.S.2d 223, 583 N.E.2d 935 [1991] ). To the extent that lower courts have held to the contrary (see e.g. Marmol v. Green, 7 A.D.3d 682, 777 N.Y.S.2d 512 [2d Dept. 2004] ; Matter of Bulger v. Nassau County Med. Ctr., 266 A.D.2d 212, 697 N.Y.S.2d 345 [2d Dept. 1999] ), those cases should not be followed.
The test we apply today is not whether it would be "absurd" for the plaintiff to commence suit (dissenting op. at 760, 71 N.Y.S.3d at 409, 94 N.E.3d at 897); instead we apply the established summary judgment standard to the question of whether there is "ongoing treatment of a medical **757 condition" ( Massie, 78 N.Y.2d at 519, 577 N.Y.S.2d 223, 583 N.E.2d 935 ). The rhetoric of the dissent, warning of the dire consequences of our decision, is unwarranted. Of course, no "ghastly" written notice from a doctor banishing a patient is now required (dissenting op. at 761, 71 N.Y.S.3d at 409, 94 N.E.3d at 897). *895 The dissent would institute a rule requiring plaintiffs to get second opinions; yet such a rule would disadvantage plaintiffs without access to such resources. Likewise, by accusing plaintiff-based on the testimony of her expert that her condition worsened during the time she was treated by defendant-of "aggravat[ing] the effects" of the alleged malpractice by "choosing not to switch physicians" (dissenting op. at 761, 71 N.Y.S.3d at 410, 94 N.E.3d at 898), the dissent would place an affirmative burden on the plaintiff to change doctors by a certain time or risk being blamed, as a matter of law, for the extent of her injury. In charging the plaintiff with "seeking no medical care for her shoulder from 2003 to 2006" (dissenting op. at 761, 71 N.Y.S.3d at 410, 94 N.E.3d at 898), the dissent seems to be taking issue with our lack of a per se rule governing gaps in treatment, rather than with any act or omission by the plaintiff. Reasonable minds may indeed differ on whether plaintiff ultimately makes her case-somewhat the point in denying summary judgment-but here we hold only that issues of fact exist that are for a jury to decide.
This record therefore raises triable issues of fact concerning whether the continuous treatment rule applies here. Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs, and the certified question answered in the affirmative.