Clifford v Kates (2019 NY Slip Op 00744)





Clifford v Kates


2019 NY Slip Op 00744


Decided on February 1, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 1, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., DEJOSEPH, NEMOYER, AND TROUTMAN, JJ.


1000 CA 18-00245

[*1]DARLENE CLIFFORD, PLAINTIFF-APPELLANT,
v
STEPHEN L. KATES, M.D., HIGHLAND HOSPITAL OF ROCHESTER AND UNIVERSITY OF ROCHESTER, DEFENDANTS-RESPONDENTS. 






DAVID L. MURPHY, PC, ROCHESTER (DAVID L. MURPHY OF COUNSEL), FOR PLAINTIFF-APPELLANT.
BROWN, GRUTTADARO, GAUJEN AND PRATO, LLC, ROCHESTER (JEFFREY S. ALBANESE OF COUNSEL), FOR DEFENDANT-RESPONDENT STEPHEN L. KATES, M.D.
OSBORN, REED & BURKE, LLP, ROCHESTER (KATHLEEN BENESH OF COUNSEL), FOR DEFENDANTS-RESPONDENTS HIGHLAND HOSPITAL OF ROCHESTER AND UNIVERSITY OF ROCHESTER. 


 Appeal from an order of the Supreme Court, Monroe County (Daniel J. Doyle, J.), entered April 20, 2017. The order granted the motion of defendants Highland Hospital of Rochester and University of Rochester and the cross motion of defendant Stephen L. Kates, M.D., for summary judgment dismissing the complaint. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion and cross motion are denied, and the complaint is reinstated.
Memorandum: Plaintiff commenced this medical malpractice action on December 16, 2013 seeking damages for injuries she allegedly sustained as the result of the negligence of defendant Stephen L. Kates, M.D. in surgically replacing her hip on July 9, 2008. The complaint asserted causes of action for medical malpractice against each defendant and alleged, inter alia, theories of direct and vicarious liability against defendant Highland Hospital of Rochester (Highland), where the operation was performed, and defendant University of Rochester (UR), which employed Kates as of September 1, 2008.
Highland and UR (collectively, hospital defendants) moved and Kates cross-moved for summary judgment dismissing the complaint against them, contending that plaintiff's treatment with Kates ended prior to June 16, 2011—two years and six months before commencement of this action—and that the action was therefore untimely under CPLR
214-a. Defendants argued that the continuous treatment doctrine did not toll the statute of limitations because the requisite trust and confidence between Kates and plaintiff was severed as of January 26, 2011, when Kates last treated plaintiff at a free clinic operated by the hospital defendants. The hospital defendants also contended that they were not vicariously liable for any treatment of plaintiff at the clinic within the applicable limitations period because they neither employed nor controlled any of the treating physicians. Kates further asserted that he was free of negligence because he performed plaintiff's hip surgery within the applicable standard of care.
Plaintiff opposed the motion and cross motion, arguing that the action was timely because her treatment with Kates and the clinic continued until November 26, 2011—less than 2½ years before the action was commenced. Plaintiff further asserted that the hospital defendants were vicariously liable for the malpractice of the clinic's other attending physicians because the hospital defendants established protocols and standards for the clinic. In addition, plaintiff [*2]submitted an affirmation from an expert who opined that Kates's surgery and postoperative treatment deviated from the standard of care.
Supreme Court granted the motion and cross motion and dismissed the complaint. The court determined that Kates continuously treated plaintiff from the date of the surgery until January 14, 2009, but that plaintiff failed to establish any continuous treatment after that date because plaintiff did not return to Kates or the clinic for two years, expressed dissatisfaction with Kates's treatment, attempted to get the advice of other doctors, and obtained HIPAA releases for potential litigation. Based on its determination that the continuous treatment tolling period ended on January 14, 2009, the court held that plaintiff's action was untimely commenced on December 16, 2013. In its analysis, the court assumed that plaintiff had asserted theories of vicarious liability against the hospital defendants based only on Kates's alleged malpractice, and it thus did not address plaintiff's claims against those defendants based on their alleged malpractice in connection with plaintiff's treatment at the clinic. The court also did not address whether Kates satisfied the applicable standard of care. Plaintiff appeals, and we reverse.
Preliminarily, we agree with plaintiff that the court incorrectly assumed that she had asserted theories of liability against the hospital defendants based solely on Kates's alleged malpractice. To the contrary, plaintiff consistently maintained throughout this litigation that the hospital defendants were liable both for Kates's alleged malpractice and for any other malpractice stemming from plaintiff's treatment at their free clinic through November 30, 2011, a date well within the applicable limitations period. Those latter claims are indisputably timely, and the court therefore erred in granting the hospital defendants' motion to that extent (see generally Hill v St. Clare's Hosp., 67 NY2d 72, 80-81 [1996]; Noble v Porter, 188 AD2d 1066, 1066 [4th Dept 1992]; Mduba v Benedictine Hosp., 52 AD2d 450, 453 [3d Dept 1976]).
The court further erred in granting the motion and cross motion on the ground that the action was time-barred because the continuous treatment tolling period expired on January 14, 2009. "Pursuant to CPLR 214-a, [a]n action for medical . . . malpractice must be commenced within two years and six months of the act, omission or failure complained of . . . However, the statute has a built-in toll that delays the running of the limitations period where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure . . . Under the continuous treatment doctrine, the 2½ year period does not begin to run until the end of the course of treatment, when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint" (Gomez v Katz, 61 AD3d 108, 111 [2d Dept 2009] [internal quotation marks omitted]). To apply the continuous treatment doctrine, there must be an "ongoing relationship of trust and confidence between" the plaintiff and physician (Ushkow v Brodowski, 244 AD2d 931, 932 [4th Dept 1997]). Ultimately, "[t]he determination whether continuous treatment exists must focus on the patient' " (Lohnas v Luzi [appeal No. 2], 140 AD3d 1717, 1718 [4th Dept 2016], affd 30 NY3d 752 [2018]), and the "continuing trust and confidence' of a patient in the physician is, by nature, a question of fact requiring an examination of the unique facts and circumstances of each case" (Gomez, 61 AD3d at 115). In determining whether a question of fact exists as to the applicability of the continuous treatment doctrine, the plaintiff's version of the facts must be accepted as true (see Scribner v Harvey, 245 AD2d 1120, 1121 [4th Dept 1997]).
Here, although defendants met their initial burden of establishing that more that 2½ years had elapsed between the date of the alleged malpractice and the commencement of the action (see Hilts v FF Thompson Health Sys., Inc. [appeal No. 2], 78 AD3d 1689, 1691 [4th Dept 2010]; Simons v Bassett Health Care, 73 AD3d 1252, 1254 [3d Dept 2010]), plaintiff raised triable issues of fact in opposition as to whether she intended to end her relationship with Kates on January 14, 2009. Specifically, plaintiff submitted the deposition testimony of Kates in which Kates admitted that he continued to treat plaintiff until at least January 26, 2011. Plaintiff's submissions also established that, while she did indeed look intermittently for another physician to help her with her postoperative complaints, the clinic's free services were her only viable and stable avenue for treatment (see generally Lohnas, 140 AD3d at 1718). Indeed, as late as July 2011, plaintiff still had enough confidence in Kates to ask if he would perform corrective hip surgery. Moreover, although plaintiff requested her medical records and consulted with attorneys in 2010, the mere consultation with an attorney to explore a potential malpractice claim does not, by itself, terminate a course of treatment (see Guarino v Sharzer, 281 AD2d 188, 189 [1st Dept [*3]2001]). Furthermore, on January 26, 2011, Kates ordered an ultrasound for plaintiff and, on July 27, 2011, plaintiff was seen in the clinic by another physician to evaluate the results of the ultrasound. That physician recommended to plaintiff that she see Kates to discuss those results, and plaintiff testified in her deposition that she was expecting to see Kates after the ultrasound to discuss whether corrective hip revision surgery was necessary. That testimony further indicates that plaintiff expected her doctor-patient relationship with Kates to continue (see Lawyer v Albany Med. Ctr. Hosp., 246 AD2d 800, 802 [3d Dept 1998]). Thus, even though plaintiff was somewhat disaffected with Kates, the record does not conclusively establish that either plaintiff or Kates regarded the gap in treatment or plaintiff's consultation with counsel as the end of their treatment relationship, and we therefore cannot conclude that the continuous treatment doctrine no longer applied as a matter of law after January 14, 2009 (see Lohnas, 140 AD3d at 1718-1719; Edmonds v Getchonis, 150 AD2d 879, 881 [4th Dept 1989]).
Furthermore, although the court did not reach this issue, we also conclude that questions of fact exist regarding whether, for purposes of the continuous treatment doctrine, plaintiff's treatment by various other physicians in the clinic should be imputed to Kates (see Mendrzycki v Cricchio, 58 AD3d 171, 176 [2d Dept 2008]). Finally, the competing expert affirmations submitted by the parties preclude summary judgment on the issue of whether Kates's treatment of plaintiff satisfied the standard of care (see generally Crutchfield v Jones, 132 AD3d 1311, 1311 [4th Dept 2015]).
Entered: February 1, 2019
Mark W. Bennett
Clerk of the Court